USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1407 REDONDO CONSTRUCTION CORPORATION, Plaintiff, Appellee, v. BANCO EXTERIOR DE ESPANA, S.A., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and McAuliffe,* District Judge. ______________ ____________________ Jose A. Axtmayer, Francisco A. Besosa, Danilo M. Eboli and __________________ _____________________ ________________ Goldman Antonetti Cordova & Axtmayer on brief for appellant. ____________________________________ Antonio Moreda-Toledo, Pedro J. Diaz-Garcia and Moreda & Moreda _____________________ ____________________ ________________ on brief for appellee. ____________________ November 24, 1993 ____________________ ____________________ *Of the District of New Hampshire, sitting by designation. ALDRICH, Senior Circuit Judge. This is the ______________________ epilogue to a charade designed by a foreign lender to avoid payment of Puerto Rico income taxes on Puerto Rico income. The script was a farce; the players did not even follow it. Its reviewers give it a bad notice. I. Background __________ Plaintiff, Redondo Construction Corp., is a Puerto Rico corporation engaged in the construction business. Defendant, Banco Exterior de Espa a, is a Spanish bank with an office in Miami, Florida. In 1985 defendant sent one of its vice presidents to Puerto Rico, where he solicited the opportunity to finance a part of plaintiff's construction work. Negotiations ensued; plaintiff disclosed its financial statements, and those of its two stockholders, as proof that it was economically sound. At some point defendant conditioned its performance on plaintiff's acceptance of a structure it concocted to prevent its incurring tax liability under 13 L.P.R.A. 3231 that imposes on foreign corporations a 29% tax on income earned in Puerto Rico, including interest on loans to a Puerto Rico corporation. 13 P.R.L.A. 3119(a)(1). Plaintiff agreed. The parties accordingly created a third entity, "Redondo-USA," a Delaware corporation that would appear as nominal borrower on defendant's credit line. Counsel for defendant drew up the incorporation papers and mailed them to -2- plaintiff in Puerto Rico. Plaintiff's president was made president of Redondo-USA. The agreement provided that a credit line would be extended to Redondo-USA; Redondo-USA would then forward the funds to plaintiff for its construction projects; plaintiff would assign the proceeds from its construction contracts to Redondo-USA, which would then use these funds to repay defendant. Plaintiff and its two stockholders appeared as guarantors and "principal obligors" on the credit line agreement. After the execution of the agreement, the parties largely disregarded the separate existence of Redondo-USA. Although the agreement provided that loan payments to defendant were to be made by Redondo-USA, in fact plaintiff made those payments throughout, by its own checks, naming defendant as the payee. There was no mention of Redondo-USA. Plaintiff and defendant both certified annually to defendant's auditors defendant's running account with plaintiff. Again, no mention of Redondo-USA. The tri-party agreement, made much of in defendant's brief, was a joke, even to the participants. In 1990 the Puerto Rico Department of Treasury determined that plaintiff had made interest payments to defendant of $591,332. Because 13 P.R.L.A. 3144 requires withholding of the 29% tax from interest payments, the Treasury assessed back taxes of $171,486, and penalty and -3- interest charges of $40,277, on plaintiff. Plaintiff then brought this action seeking compensation from defendant for these payments. The district court found defendant liable to plaintiff for the back taxes, but not for the penalty or interest. Defendant appeals. We affirm. II. Discussion __________ A. Jurisdiction ____________ The district court determined that it had specific jurisdiction over defendant on the grounds that plaintiff's claim arose directly out of defendant's acts in the forum, regardless of whether defendant's contacts with the forum were sufficient to establish jurisdiction for all purposes. We agree that there is ample basis for specific jurisdiction. Defendant's vice president traveled to Puerto Rico to solicit plaintiff's business. As a result of that solicitation, plaintiff and defendant negotiated the credit agreement. Plaintiff signed the credit agreement and was a party to it, although it was not the nominal borrower. Under the agreement, plaintiff incurred ongoing obligations to defendant, not only to guarantee the loan but also to assign its construction proceeds to Redondo-USA. Thus even under its own characterization of the agreement, defendant had sufficient involvement in Puerto Rico to have foreseen that it might be sued there on disputes arising from the agreement. International Shoe v. Washington, 326 U.S. 310 __________________ __________ -4- (1945); United Elec. Workers v. 163 Pleasant St. Corp., 960 _____________________ _______________________ F.2d 1080 (1st Cir. 1992). Defendant has not asserted any particular burden in appearing in Puerto Rico rather than Florida, and Puerto Rico has a distinct interest in having disputes under its tax code adjudicated in Puerto Rico courts. Even if the agreement had been strictly performed, it would not be unreasonable or unfair, in these circumstances, to subject defendant to the authority of a Puerto Rico tribunal. Burger King Corp. v. __________________ Rudzewicz, 471 U.S. 462, 476-77 (1985). _________ Moreover, we need not blind ourselves to the reality behind the agreement's transparent fictions. The agreement is no different in substance from one in which plaintiff is the borrower. "If International Shoe stands for __________________ anything, . . . it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings." Vencedor Mfg. Co. v. _________________ Gougler Indus., 557 F.2d 886, 891 (1st Cir. 1977).1 ______________ B. Forum clause ____________ In this situation defendant points to a provision in the agreement as an escape hatch. The agreement provided that the "Borrower and the Guarantors each hereby expressly _________ ____________________ 1. For the same reasons, we find that defendant's actions come within the language of Puerto Rico's Long-arm statute, 32 P.R.L.A. App. III Rule 4.7(a). See Industrial ___ __________ Siderurgica, Inc. v. Thyssen Steel Caribbean, Inc., 114 __________________ _______________________________ D.P.R. 548, 14 Official Translation 708, 721-22 n.5 (1983). -5- submits to the jurisdiction of all Federal and State courts located in the State of Florida." (Emphasis ours). Defendant argues that this clause prohibits plaintiff from suing in the District of Puerto Rico. This is a confusion. Affirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction. See ___ Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 _______________________ _______________ (9th Cir. 1987). There is a total difference between "expressly" and "exclusively." Even if there could be thought to be ambiguity, its resolution must be in plaintiff's favor. Under Florida law (by which the agreement provides it is to be construed), as elsewhere, ambiguities are construed against the drafter. Capital City Bank v. __________________ Hilson, 59 Fla. 215, 219, 51 So. 853, 855 (1910). Thus even ______ if the agreement could have some effect upon this collateral action, that effect, jurisdictionally, would be nil. C. Liability _________ The court held that defendant was liable to plaintiff on either of two theories: (1) because plaintiff is entitled to repayment for having paid the debt of another, 31 P.R.L.A. 3162; or (2) because defendant was unjustly enriched at plaintiff's expense. Each theory depends on the assumption that defendant was the party ultimately responsible for payment of the tax, which defendant disputes. We note first that nothing before us indicates that -6- the assessment of taxes on plaintiff by the Puerto Rico Treasury was erroneous. Defendant makes much of the contractual language stating that only Redondo-USA, a Delaware corporation, shall make payments, but that language is irrelevant on this point; the agreement does not bind the Treasury. Defendant does not dispute that payments on the loan were in fact made by plaintiff by check drawn on its Puerto Rico account and that defendant accepted those payments. This is sufficient to bring the payments squarely within 3231 as income derived "from sources within Puerto Rico." 13 P.R.L.A. 3231(a)(1)(A). Cf. Caribe Crown Cap ___ _________________ Corp. v. Secretary of the Treasury, 108 D.P.R. 857, 863-64 _____ __________________________ (1979) (translation) (source of income derived from intangible property is place where intangible property "is actually and effectively used"); Inter-American Orange Crush ___________________________ Co. v. Secretary of the Treasury, 81 P.R.R. 286, 297-298 ___ ___________________________ (1959) (source of royalty income "depends on the situs where the personal property from which the income is derived is really and actually used"). Moreover, the Treasury could properly disregard the corporate status of the nominal borrower, Redondo-USA, as merely an instrument "to evade a clear legislative purpose." South P.R. Sugar Corp. v. Sugar _______________________ _____ Board, 88 P.R.R. 42, 56 (1963). _____ Just as the transactional structure is insufficient to shift the tax burden away from defendant by operation of -7- law, it is also insufficient to show an intention to shift that burden by agreement. Had the parties explicitly agreed that plaintiff would be responsible for the taxes that would otherwise fall on defendant, no further analysis would be necessary. The parties expressed no such intention, as they could easily have done; in fact, the agreement contains sections entitled "Payment of Taxes" and "Payment of Indebtedness, Taxes" in which no such terms appear. Rather, the parties set up a two-step transaction that appears geared more to evade the imposition of the tax altogether than to reallocate that burden between the parties. While obviously defendant hoped to avoid the tax, there is nothing in the language of the agreement evidencing a mutual intent that plaintiff take on the tax burden itself. We find no contractual defense to the action.2 Affirmed. ________ ____________________ 2. Defendant briefly argues that once plaintiff had paid, defendant should not have to make compensation, even if it would initially have been responsible. The cases cited by defendant, however, are all from jurisdictions outside Puerto Rico and are unpersuasive in light of Puerto Rico's statutory provision allowing recovery by one who pays the debt of another. 31 P.R.L.A. 3162. -8-