Arguss v. Teletron, Inc.           CV-99-257-JD  11/19/99
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Arguss Communications Group, Inc.

        v.                          Civil No. 99-257-JD

Teletron, Inc.


                          O R D E R



        The plaintiff, Arguss Communications Group, Inc. ("Arguss")

brings this action against the defendant, Teletron, Inc.

("Teletron"), seeking a declaratory judgment as to the rights and

obligations of the parties under a service agreement.  Before the

court is Teletron's motion to dismiss for lack of personal

jurisdiction and for improper venue based on a forum selection

clause or, in the alternative, to transfer the case to the United

States District Court for the Southern District of Indiana

(document no. 7).  Also before the court is Teletron's motion to

strike (document no. 14).  Arguss objects to both motions.[1]

_____

        [1]Teletron moves to strike certain paragraphs from Arguss's
memorandum of law and exhibits for the purpose of deciding the
motion to dismiss or transfer.  The court does not consider the
challenged paragraphs or exhibits for the purpose of deciding the
motion to dismiss or transfer.  Therefore, the motion to strike
is denied.

## Background[2]

The plaintiff, Arguss, is a corporation registered under the laws of Delaware with its principal place of business in New Hampshire. One of Arguss's divisions is White Mountain Cable Construction ("WMCC"), which operates primarily in New England. The defendant, Teletron, is a corporation registered and with its principal place of business in Indiana. Teletron does not maintain offices, sell products, or have employees or representatives located in New Hampshire, nor does it advertise, have an agent for service of process, or maintain a telephone listing, bank account or real property in New Hampshire. Teletron serves its customers by reviewing their telecommunications bills and re-negotiating their telecommunications contracts, services it performs from Indiana. Teletron charges an up-front fee for its services and a percentage of the savings it gains for its customers.

WMCC's offices are located in New Hampshire. In the fall of 1998, WMCC's controller, Daniel Hotchkiss, was solicited by a telemarketer for Teletron. Hotchkiss had done nothing to initiate the solicitation. After learning about Teletron's

---

[2]The facts related in this section are taken from the complaint and the parties' submissions in support of and in opposition to Teletron's motion to dismiss. The factual summary is provided for background purposes only and does not represent findings of fact by this court.

2

services, Hotchkiss agreed that Teletron could send some materials to Hotchkiss at his office. Teletron faxed Hotchkiss a letter, and sent Hotchkiss a letter with some materials about Teletron. A few months later, Teletron again contacted Hotchkiss and faxed him a Client Service Agreement ("the Agreement"). Hotchkiss signed the Agreement as controller for the "Client," which was listed on the Agreement as "Arguss Communications Group, Inc.-White Mountain Cable Construction Division." The Agreement was for a term of twelve months, and it contained a clause which stated that "jurisdiction for this Agreement shall be in Monroe County, IN."

The Agreement permitted Teletron to re-negotiate WMCC's telecommunications contracts. In addition, the Agreement prevented WMCC from negotiating with any telecommunications provider for the duration of the Agreement. After faxing the signed Agreement to Teletron, Hotchkiss received further communications from Teletron concerning the use of Teletron's services. Hotchkiss sent Teletron an authorization letter and confidentiality agreement, and sent payment to Teletron for the up-front service fee.

After a disagreement arose concerning the binding effect of the Agreement, Arguss filed a diversity action in this court for declaratory judgment, seeking a declaration that the Agreement

3

between Teletron and WMCC is not binding or, alternatively, that Arguss did not breach the Agreement. Arguss argues that WMCC had no legal authority to form a binding contract with Teletron, and therefore WMCC could not breach the Agreement. Alternatively, Arguss argues that if there is a binding contract, it is binding only on WMCC and not Arguss.

Discussion

A.   Personal Jurisdiction

1.   Standard of Review

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Massachusetts Sch. of Law at Andover v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). The preferred standard for cases where the parties do not dispute essential jurisdictional facts is for the plaintiff to make a prima facie showing of jurisdiction.[3] See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); Faigin v. Kelly, 919 F. Supp. 526, 529 (D.N.H. 1996). Under the

_____

[3]The parties do not request an evidentiary hearing on the issue of personal jurisdiction, nor is the record rife with contradictions. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992).

4

prima facie standard, the court takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Massachusetts Sch. of Law, 142 F.3d at 34 (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

However, the plaintiff may not rely on unsupported allegations to meet the prima facie standard; the court takes as true only those "specific facts" for which the court finds evidentiary support in the record. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) ("[T]he plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts . . . the court, in a manner reminiscent of its role when a motion for summary judgment is on the table . . . must accept the plaintiff's (properly documented) evidentiary proffers as true"); United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir. 1993); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992); see also Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997) (finding district court properly took jurisdictional facts as true where facts were supported in declarations and defendant did not rebut); Anderson v. Century Prods. Co., 943 F. Supp. 137, 140

5

(D.N.H. 1996) (citing <u>Foster-Miller</u>).  The court also considers uncontradicted facts alleged by the defendant.  <u>See</u> <u>Massachusetts Sch. of Law</u>, 142 F.3d at 34.

2.  <u>Due Process Analysis</u>

In cases where subject matter jurisdiction exists because of the diversity of the parties, personal jurisdiction over a nonresident defendant is governed by the forum state's long-arm statute and by the constitutional limitations of due process. <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1387; <u>Anderson</u>, 943 F. Supp. at 140.  In order to defeat a motion to dismiss under the prima facie standard, the plaintiff must go beyond the pleadings and present specific facts showing each element required by both the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause.  <u>See</u> <u>Boit</u>, 967 F.2d at 675; <u>Faigin</u>, 919 F. Supp. at 529.  New Hampshire's long-arm statute applicable to unregistered foreign corporations, RSA 293-A:15.10, has been interpreted to be coextensive with the constitutional boundaries of due process.  <u>See</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995) (citing <u>McClary v. Erie Engine & Mfg. Co.</u>, 856 F. Supp. 52, 55 (D.N.H. 1994)); <u>Anderson</u>, 943 F. Supp. at 141 (same).  Therefore, the court need only determine whether the application of personal jurisdiction comports with Fourteenth

6

Amendment due process principles.[4]  See id.

"The Fourteenth Amendment's concern of fundamental fairness is achieved by the central requirement that certain 'minimum contacts' exist between the defendant and the forum state." Sawtelle, 70 F.3d at 1388 (quoting International Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945); Ticketmaster, 26 F.3d at 206).  The First Circuit uses a three-part test to determine whether sufficient contacts exist to justify the exercise of specific jurisdiction over the defendant:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389 (quoting United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).  The court considers each prong of the three-part test below.

_____

[4]The plaintiff asserts only that there is specific jurisdiction, not general jurisdiction.  See generally Donatelli v. National Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990) (distinguishing between general and specific jurisdiction). Accordingly, the court confines its analysis to the question of whether the plaintiff has made a prima facie demonstration of specific jurisdiction over the defendant.

a.  Relatedness

The first prong of the due process analysis requires that the claim "arise out of, or be related to, the defendant's in-forum activities." Ticketmaster, 26 F.3d at 206.  In a case sounding in contract law (as opposed to tort law), the court's inquiry focuses on "whether the defendant's forum-based activities are 'instrumental in the formation of the contract.'" Massachusetts Sch. of Law, 142 F.3d at 35 (quoting Hahn v. Vermont Law Sch., 698 F.2d 48, 51 (1st Cir. 1983)).

"The transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of our analysis." Sawtelle, 70 F.3d at 1389-90.  The communications between Teletron and WMCC and between Teletron and Arguss are at the heart of the underlying dispute in this case, as is the meaning of the Agreement formed between WMCC and Arguss.  See Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) ("the very document that represents [the] forum-related activity is itself the cause and object of the lawsuit").  All of the individuals who communicated with Teletron on behalf of Arguss and WMCC were located in New Hampshire, the initial telemarketing contact and other calls were made by telephone to New Hampshire, and Teletron's correspondence to Arguss and WMCC was mailed or faxed to New Hampshire.  Whether or not a binding contract was formed,

8

Teletron's communications with individuals in New Hampshire were instrumental to the formation of the Agreement. See United Elec., 960 F.2d at 1089; Anderson, 943 F. Supp. at 142. Therefore, the court finds that the underlying litigation is related to Teletron's activities in New Hampshire.

b. Purposeful Availment

"The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). The court should not exercise personal jurisdiction unless it is fair, just and reasonable to do so. See id. The court bases its analysis on two factors, voluntariness and foreseeability. See Nowak, 94 F.3d at 716; Sawtelle, 70 F.3d at 1391.

"The defendant's contacts with the forum state must be voluntary – that is, not based on the unilateral actions of another party or a third person." Nowak, 94 F.3d at 716. Solicitation, or the "affirmative seeking of business," meets the test for voluntariness. See Vencedor Mfg. Co., Inc. v. Gougler Indus., Inc., 557 F.2d 886, 891 (1st Cir. 1977); see also Nowak, 94 F.3d at 716-17 (indicating that one unprompted solicitation may be a sufficiently meaningful contact); Pritzker, 42 F.3d at

9

61 (recognizing that a single contact can support jurisdiction). Teletron initiated the relationship with WMCC and Arguss by having a telemarketer solicit WMCC in New Hampshire by telephone. Teletron conducted further communications by telephone, mail, and fax with WMCC prior to the signing of the Agreement. It is reasonable to infer that Teletron knew it was contacting a company located in New Hampshire. All of these facts lead to the conclusion that Teletron's actions were voluntary.[5]

The foreseeability element of purposeful availment requires the defendant to have engaged in contacts with the forum state "'such that [the defendant] should reasonably anticipate being haled into court there.'" Nowak, 94 F.3d at 716 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). If the defendant purposefully avails itself of the privileges of conducting activities within a particular state, then the defendant invokes the benefits and protections of that state's laws, making it reasonable to exercise jurisdiction over the defendant. See Asahi Metal Indus. v. Superior Ct. of Cal., 480 U.S. 102, 109 (1987); Faigin, 919 F. Supp. at 530. By deliberately contacting a New Hampshire corporation in order to

_____

[5]Teletron's lack of physical presence in New Hampshire does not bar the exercise of personal jurisdiction. See Pritzker, 42 F.3d at 62. The court looks beyond physical presence to the nature and degree of the contacts made by the nonresident defendant. See id.

10

form an agreement with that corporation, forming an agreement, and conducting an ongoing relationship with the corporation, Teletron could reasonably foresee the possibility that it would be haled into court in New Hampshire.  See Nowak, 94 F.3d at 717. Teletron's activities in New Hampshire were neither random, isolated, nor fortuitous.  On the contrary, they were deliberate, targeted to New Hampshire, and calculated to garner profit through further activities in New Hampshire.  For these reasons, the court finds that Teletron purposefully availed itself of the privilege of conducting activities in New Hampshire.

3.  Gestalt factors

The third prong of the three-part due process analysis is whether the exercise of personal jurisdiction "comports with traditional notions of 'fair play and substantial justice.'" Nowak, 94 F.3d at 717 (quoting International Shoe, 326 U.S. at 320).  The court considers the five "Gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

United Elec., 960 F.2d at 1088 (citing Burger King, 471 U.S. at 477); see also Nowak, 94 F.3d at 717.  The significance accorded the third prong depends on the strength of the plaintiff's

11

showings with respect to the other two prongs of relatedness and purposeful availment. See Nowak, 94 F.3d at 717. If the plaintiff makes a weak showing of relatedness and purposeful availment, the court raises the bar for the third prong; likewise, if the plaintiff makes a strong showing on the first two prongs, the burden is eased for the plaintiff on the third prong. See id. The court notes here that the plaintiff has made a fairly strong showing of relatedness and purposeful availment.

Because a nonresident defendant always incurs some burden to appear in the forum state, the First Circuit has said that in order for this "factor to have any significance, the defendant must demonstrate that 'exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" Nowak, 94 F.3d at 718 (quoting Pritzker, 42 F.3d at 64). Teletron argues that the distance between Indiana and New Hampshire poses an onerous burden for its witnesses, citing Ticketmaster in support. However, the First Circuit in Ticketmaster noted only that the burden of traveling across an ocean or the width of North America is onerous. See Ticketmaster, 26 F.3d at 210; cf. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (finding travel from Illinois to California not significantly burdensome); Pritzker, 42 F.3d at 64 (New York to Puerto Rico not

significantly burdensome); <u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 994 F. Supp. 34, 45 (D. Mass. 1997) (Colorado to Massachusetts not significantly burdensome).  The court notes that, while the burden on Teletron is not minor and this factor is an important one, the burden here is simply not severe enough to defeat jurisdiction.  We are in an age where air travel for long distances is a commonplace occurrence for many of those engaged in business.

The forum state has a significant interest where one of its citizens has entered into a contract and the contract has allegedly been breached in the forum state.  <u>See</u> <u>Salpoglou v. Shlomo Widder</u>, 899 F. Supp. 835, 838 (D. Mass. 1995).  Here, where the plaintiff seeks to clarify the rights and obligations of the parties under the Agreement, the litigation could result in a conclusion that a contract with a New Hampshire corporation has been breached in New Hampshire.

Teletron concedes that New Hampshire is the most convenient forum for Arguss.  Furthermore, the plaintiff's choice of forum is due a degree of deference.  <u>See</u> <u>Ticketmaster</u>, 26 F.3d at 211 (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235 (1981)).  The judicial system's interest generally does not favor either party unless there is a possibility that multiple claims will be brought in different jurisdictions, and that does not appear to

be an issue in this case.[6] See Nowak, 94 F.3d at 718. Finally, considerations of public policy do not appear to weigh in either party's favor.

In reviewing its analysis of the five Gestalt factors, the court finds that the results tend, though not strongly, to favor Arguss. Coupled with Arguss's convincing demonstration that the relatedness and purposeful availment prongs of the three-part test have been met, the court finds that it may exercise personal jurisdiction over Teletron in compliance with due process.

B.    Dismissal Based on Forum Selection Clause

Teletron argues that the Agreement contains a binding forum selection clause that precludes Arguss from bringing suit outside of Monroe County, Indiana. Arguss objects, claiming that the clause is not a valid forum selection clause and that even if it were, it does not bind Arguss because WMCC had no authority to contract, or because Arguss is not bound by the Agreement.

It is not entirely clear whether a forum selection clause

---

[6]Teletron argues that a choice of law clause favoring Indiana law weighs in its favor. However, Arguss denies that WMCC's Agreement with Teletron contains a choice of law clause, so the court cannot consider this fact for the purpose of deciding this motion. See Boit, 967 F.2d at 675 (the court may consider only undisputed facts presented by the defendant). The court also notes that the Agreement on its face does not appear to contain a choice of law clause.

14

can deprive a court of venue, and if so, under what mechanism. See Lambert v. Kysar, 983 F.2d 1110, 1112 n.1 (1st Cir. 1993) (noting challenge based on forum selection clause should be brought pursuant to Rule 12(b)(6)); Maxon Eng'g Servs., Inc. v. United Sciences, Inc., 34 F. Supp. 2d 97, 98 (D.P.R. 1998) (deciding similar motion as transfer under 28 U.S.C.A. § 1404); Stereo Gema, Inc. v. Magnadyne Corp., 941 F. Supp. 271, 276 n.10 (D.P.R. 1996) (treating motion under Fed. R. Civ. P. 12(b)(3)).[7] The court will assume for the purpose of deciding this motion that it may, pursuant to 28 U.S.C.A. § 1406(a), dismiss a case for lack of venue based on a forum selection clause.

The parties have not addressed whether state law or federal common law controls the validity and interpretation of the forum selection clause. The First Circuit has not defined its position on this issue. See Lambert, 983 F.2d at 1116 & n.10 (declining to decide issue and noting circuit split); see also Courville Co. v. Coopers & Lybrand Sec., No. 97-606 (D.N.H. Apr. 27, 1998) (Barbadoro, J.) (applying New Hampshire law to interpret forum selection clause). Because the forum selection clause here would not be interpreted as a mandatory clause under either New Hampshire law or federal common law, it is unnecessary to decide

_____

[7]While Teletron moves for dismissal based on the forum selection clause, Teletron does not specify in its motion upon which procedural rule it relies.

15

this issue. See Triangle Trading Co. v. Robroy Indus., Inc., 952 F. Supp. 75, 79-80 (D.P.R. 1997) (declining to decide issue and applying federal common law where it does not significantly differ from Puerto Rico law); see also Dancart Corp. v. St. Albans Rubber Co., Ltd., 124 N.H. 598, 602-03 (1984) (interpreting whether forum selection clause is mandatory under New Hampshire law).

A forum selection clause may be mandatory or permissive. See, e.g., Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 321 (10th Cir. 1997); John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc., 22 F.3d 51, 52 (2d Cir. 1994); Redondo Constr. Corp. v. Banco Exterior De Espana, S.A., 11 F.3d 3, 6 (1st Cir. 1993); Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989). A forum selection clause does not affect the usual presumption in favor of a plaintiff's choice of forum unless the clause is mandatory. See Utah Pizza Serv., Inc. v. Heigel, 784 F. Supp. 835, 837 (D. Utah 1992). "'To be mandatory, a forum selection clause must contain language that clearly designates a forum as the exclusive one.'" Trans Nat'l Travel, Inc. v. Sun Pac. Int'l, Inc., 10 F. Supp. 2d 79, 82 (D. Mass. 1998) (quoting Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th Cir. 1995)).

16

A permissive clause merely grants jurisdiction to the named forum, and does not preclude a cause of action from being brought elsewhere. See Utah Pizza, 784 F. Supp. at 837-38. If the court determines that a forum selection clause is not mandatory, that does not mean that the clause is effectively written out of the contract. See Snapper, Inc. v. Redan, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999). It simply means that the clause does not preclude a party from bringing suit in any jurisdiction where venue is proper. See id.

For a forum selection clause to be mandatory, the clause must clearly display the intent of the contracting parties to choose a particular forum to the exclusion of all other fora. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 881 (3d Cir. 1995); Redondo Constr. Corp., 11 F.3d at 6 ("Affirmatively conferring . . . jurisdiction by consent does not negatively exclude any other proper jurisdiction"). Despite containing forceful words like "shall," the clause will not be deemed mandatory unless it is clear that the clause mandates the exclusive use of a particular forum. See Cummings v. Caribe Mktg. & Sales Co., Inc., 959 F. Supp 560, 565 (D.P.R. 1997) (citing Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987)). Courts apply the general rule of construing ambiguous contract provisions against the drafter of forum

selection clauses.  See Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992); Hunt Wesson Foods, 817 F.2d at 78; Cummings, 959 F. Supp. at 565 n.7; Utah Pizza, 784 F. Supp. at 838 n.1.

A crucial distinction between mandatory and permissive clauses is whether the clause only mentions jurisdiction or specifically refers to venue.  See John Boutari & Son, 22 F.3d at 52; Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 756-57 (7th Cir. 1992); Docksider, 875 F.2d at 764, cited in Lambert, 983 F.2d at 1116.  In Docksider, the Ninth Circuit noted that "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Docksider, 875 F.2d at 764.  Following Docksider, the Seventh Circuit in Paper Express noted that where an intent to make venue exclusive is clearly expressed the forum selection clause is mandatory, but where only jurisdiction is specified the clause is permissive.  See Paper Express, 972 F.2d at 756.  Other courts have followed this distinction; for example, the language "jurisdiction and venue shall be in California" was held to be mandatory, Sterling Forest Assocs., Ltd. v. Barnett-Range Corp., 840 F.2d 249, 250 (4th Cir. 1988), overruled on other grounds by Lauro Lines v. Chasser, 490 U.S. 495 (1989), while the language

18

"[p]lace of jurisdiction shall be Dresden" was held to be permissive, <u>Hull 753 Corp. v. Elbe Flugzeugwerke GmbH</u>, 58 F. Supp. 2d 925, 927 (N.D. Ill. 1999).[8]

_____

[8]Other illustrative examples of mandatory and permissive clauses include:

"Jurisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado." <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u>, 106 F.3d 318, 321 (10th Cir. 1997) (mandatory).

"Any dispute . . . shall come within the jurisdiction of the competent Greek courts, specifically of the Thessaloniki Courts." <u>John Boutari & Son</u>, 22 F.3d at 52 (permissive).

"[Each party] hereby expressly submits to the jurisdiction of all Federal and State courts located in the State of Florida." <u>Redondo Constr. Corp. v. Banco Exterior De Espana, S.A.</u>, 11 F.3d 3, 5-6 (1st Cir. 1993) (permissive).

"[V]enue shall lie exclusively in Clark County, Washington." <u>Lambert v. Kysar</u>, 983 F.2d 1110 (1st Cir. 1993) (mandatory).

"[V]enue shall be proper under this agreement in Johnson County, Kansas." <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d 1342, 1346 (10th Cir. 1992) (mandatory).

"The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law. . ." <u>Hunt Wesson Foods</u>, 817 F.2d at 76 (permissive).

"Place of jurisdiction is Brazil." <u>Citro Florida, Inc. v. Citrovale, S.A.</u>, 760 F.2d 1231, 1232 (11th Cir. 1985) (permissive).

"[A]ny and all disputes . . . shall be litigated only in the Superior Court for Los Angeles, California (and in no other), and Exhibitor hereby consents to the jurisdiction of said court." <u>Pelleport Investors, Inc. v. Budco Quality Theatres</u>, 741 F.2d 273, 280 (9th Cir. 1984) (mandatory).

"[V]enue for any proceeding . . . shall be Salt Lake County,

19

The one-page Agreement contains the following paragraph:

The term of this Agreement shall be 12 months from the date of acceptance.  Client acknowledges that Teletron will perform services at its offices in Bloomington, IN, and stipulates that jurisdiction for this Agreement shall be in Monroe County, IN.

The clause contained in the Agreement confers jurisdiction on Monroe County, Indiana, but does not mention venue at all.  The clause does not say that Monroe County is the only forum where a lawsuit may proceed.  The clause resembles other clauses that courts have held to be permissive.  For these reasons, the court concludes that the clause is not a mandatory forum selection clause because it does not unambiguously indicate that the parties intended for Monroe County, Indiana to be the only forum where the parties could bring suit.  Therefore, the inclusion of the forum selection clause in the Agreement does not make venue

---

State of Utah."  Nascone v. Spudnuts, Inc., 735 F.2d 763, 765 (3d Cir. 1984) (mandatory).

"[T]he parties submit to the jurisdiction of the courts of New York."  Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 956 (5th Cir. 1974) (permissive).

"[T]he courts of the State of Michigan shall have personal jurisdiction over its person, that it shall submit to such personal jurisdiction, and that venue is proper in Michigan." Utah Pizza, 784 F. Supp. at 837 (permissive).

"Place of jurisdiction is Bad Segeberg, F.R.G."  All-Tech Indus., Inc. v. Freitag Elec., 1988 WL 84719, at *2 (N.D. Ill. Aug. 5, 1988) (permissive).

improper in the District of New Hampshire and does not warrant dismissal based on improper venue.

C.    Transfer

In the alternative, Teletron moves to transfer the case to the Southern District of Indiana pursuant to 28 U.S.C.A. § 1404.[9] Teletron argues that Indiana is the more convenient forum and that New Hampshire's interest in the litigation does not exceed Indiana's interest.  Arguss objects, arguing that the costs and equities do not strongly favor Teletron and therefore the presumption in favor of Arguss's choice of forum should be honored.

The district court may, within its discretion, transfer a case to another proper venue pursuant to 28 U.S.C.A. § 1404(a). United States ex rel. LaValley v. First Nat'l. Bank of Boston, 625 F. Supp. 591, 594 (D.N.H. 1985).  Certainly Arguss could have brought the underlying action in the Southern District of Indiana, where Teletron's principal place of business is located.

---

[9]Teletron also moves to transfer under the common law doctrine of forum non conveniens.  The court applies the statutory standards of § 1404 and not forum non conveniens doctrine, because the former has superseded the latter except in cases where transfer to a foreign sovereign is requested. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 722 (1996); see also Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947-48 (1st Cir. 1991).

See 28 U.S.C.A. § 1391(c). Section 1404(a) instructs the court to transfer a case "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . ." 28 U.S.C.A. § 1404(a).

A defendant seeking a transfer to a more convenient forum bears a heavy burden of showing that a transfer is warranted pursuant to 28 U.S.C.A. § 1404(a). See Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 439 (D.N.H. 1991). "The Supreme Court has held that '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

In exercising its discretion to transfer venue, the court must consider both public and private interests in the location of the litigation, including the convenience of the parties and witnesses, the practical concerns for trial, and administrative problems posed by choice of law or congestion of court dockets. See Gulf Oil, 330 U.S. at 508. Although no single factor is dispositive, a court should consider: "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) [the] cost of obtaining willing witnesses, and (6) any practical

22

problems associated with trying the case most expeditiously and inexpensively." F.A.I. Elec. Corp. v. Chambers, 944 F. Supp. 77, 80-81 (D. Mass. 1996) (citation omitted); see also Buckley, 762 F. Supp. at 439 (the court will consider such factors as the "convenience of the parties and witnesses and the availability of documents needed for evidence."). "Of those factors, the convenience to the expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'" Fairview Mach. & Tool Co., Inc., v. Oakbrook Int'l, Inc., 56 F. Supp.2d 134, 141 (D. Mass. 1999).

When parties have agreed to the selection of an exclusive forum, that agreement "figures centrally in the district court's calculus" under § 1404(a). Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Maxon Eng'g Servs., Inc. v. United Sciences, Inc., 34 F. Supp. 2d 97, 99 (D.P.R. 1998). However, as discussed above, the Agreement does not contain a mandatory forum selection clause; the Agreement merely indicates the parties' consent to jurisdiction in Indiana. Therefore, the clause carries little weight in the § 1404 analysis. See Trans Nat'l Travel, 10 F. Supp. 2d at 82.

The convenience of the parties is a wash; it is clearly more convenient for Teletron to litigate in Indiana and for Arguss to litigate in New Hampshire. Teletron argues that it will present

23

more witnesses at trial than Arguss, and that all of these witnesses are located in Indiana. However, Arguss claims that it will present just as many witnesses as Teletron, and that its witnesses are all located in New Hampshire. Neither party has claimed that either jurisdiction has a more congested docket, or that there would be difficulty compelling witnesses to testify in either forum. Nor does Teletron demonstrate that it will have difficulty accessing sources of proof in New Hampshire.

Upon balancing the relevant interests, the court concludes that Teletron has not met the heavy burden it carries to justify a change of venue from Arguss's chosen forum. "Transfer is inappropriate if the effect is merely to shift inconvenience from one party to the other." Buckley, 762 F. Supp. at 439. In the end, the court holds that the balance of conveniences and the interests of justice, Gulf Oil Corp., 330 U.S. at 508, counsel in favor of denying Teletron's motion to change venue.

24

## Conclusion

For the foregoing reasons, Teletron's motion to dismiss or in the alternative to transfer is denied (document no.7). Teletron's motion to strike is also denied (document no. 14).

The parties should make a concerted effort to resolve this case promptly before they invest significant time and money in discovery and trial.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 19, 1999

cc:  Andru H. Volinsky, Esquire
     Michael F. Merra, Esquire
     Mark R. Waterfill, Esquire