**INTERCALL TELECOMMUNICATIONS, INC.,** Plaintiff(s)

v.

**INSTANT IMPACT, INC. and E– Impact.net, Inc., Defendant(s).**

Civil No. 04–1186 (JAG).

United States District Court, D. Puerto Rico.

June 30, 2005.

Luis R. Perez–Giusti, Mignucci & Perez Giusti, San Juan, PR, for Plaintiffs.

Thomas J. Dolina, Bodie, Nagle, Dolina, Smith & Hobbs, P.A., Towson, MD, Jose A. Axtmayer–Balzac, Dennis B. Parces–Enriquez, Liana I. Loyola–Perez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff Intercall Telecommunications, Inc., ("Intercall") brought suit against Instant Impact and E–Impact.net (collectively, "Defendants") for nullity of contract and damages under Article 1213 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3391. (Docket No. 1). Alternatively, Intercall sets forth a claim for breach of contract under Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332.[1]

Defendants filed a motion to dismiss on the basis of a forum selection clause contained in a contract that both Intercall and the defendants agreed to. (Docket No. 6). Alternatively, defendants asks this court to transfer venue under 28 U.S.C. § 1404(a).

For the reasons set forth below, the Court **GRANTS** the defendants' motion to transfer under 28 U.S.C. § 1404(a).

## FACTUAL BACKGROUND

Intercall is a corporation duly organized and authorized to do business in Puerto Rico, and is primarily engaged in rendering call center services to its clients. Its offices and principal operations are located in Bayamón, Puerto Rico.

The defendants are corporations organized under the laws of the state of Maryland, with offices and principal place of business located in Baltimore, Maryland.

---

1. Intercall is a corporation organized and authorized to do business in Puerto Rico, with offices and principal place of business in Bayamón, Puerto Rico. Defendants are corporations organized under the laws of the state of Maryland, with offices and principal place of business located in Baltimore, Maryland.

E–Impact.net specializes in the telecommunications services industry. Instant Impact provides direct response marketing services. Both E–Impact.net and Instant Impact were co-founded and are operated by Donal Fenhagen and Grace Starmer, and share the same place of business.

On February 6, 2003, Intercall and E–Impact.net entered into a Master Member Agreement ("Master Agreement") through which Intercall would become part of E–Impact.net's network of call centers. The business relation between Intercall and E–Impact.net eventually deteriorated and on March 9, 2004, Intercall filed a complaint before this Court alleging the nullity of the Master Agreement. The defendants moved to dismiss the complaint relying on Section 27 of the Master Agreement, which contains a provision that states as follows:

*GOVERNING LAW; CONSENT TO JURISDICTION.* This Agreement and all matters arising directly or indirectly here from **shall be governed by, and construed in accordance with, the law of the State of Maryland, without reference to the choice or conflict of law provisions thereof.** Each of the parties ***irrevocably submits to the exclusive jurisdiction of the State and Federal Courts located in Maryland for the purposes of any suit, action, proceeding or judgment which directly or indirectly relates to or arises from this Agreement,*** except that nothing herein shall prevent a PARTY from enforcing in any court having jurisdiction over the other PARTY hereto any judgment, order or decree issued by a State or Federal Court of Maryland (or an appellate court issuing the same on appeal there from). (Emphasis added).(Docket 6)

Defendants argue that the contractual choice of law and forum clause is valid and enforceable and thus Maryland is the proper venue to entertain the present controversy.

Intercall opposes the defendants' motion arguing the nullity of the contract *per se.* Specifically, Intercall states that while "it is true that, given a valid contract with a forum-selection clause, there is no conflict between Puerto Rico law and federal common law regarding its enforceability ... [t]his is not true when the validity of the whole agreement has been questioned." (Docket No. 10, at 13–14). Furthermore, Intercall pointed out that "no federal statute or Rule of Procedure governs this specific issue." *Id.,* at 14.

## DISCUSSION

### I. *Standard of Review*

  A. Motion to Transfer Venue (28 U.S.C. § 1404(a))

Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir.2000). "Section 1404(a) is intended to place discretion in the District Court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (*quoting Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). A determination of venue under § 1404(a) lies in the sound discretion of the district court. *See Cianbro Corp. v. Curran–Lavoie,* 814 F.2d 7, 11 (1st Cir.1987).

The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum. *See Coady,* 223 F.3d at 11 (*citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501,

508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The factors to be considered by the Court when considering a motion to transfer include the convenience of the parties and witnesses, and the availability of documents. *See Cianbro*, 814 F.2d at 11. The moving party must establish that the factors supporting transfer predominate. *Id.*

### B. *Forum Selection Clause*

Forum selection clauses are an increasingly important phenomenon in business contracting. Parties choose to select a forum in advance for different reasons, among them: convenience; a particular forum's expertise in a specific area of the law; or simply to minimize the risk of complicated and expensive litigation over the threshold question of jurisdiction.

■ The prevailing view towards contractual forum selection clauses is that they are prima facie valid and should be enforced unless doing so is shown by the resisting party to be unreasonable under the circumstances. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen*, the Supreme Court held that enforcement of such clauses is consistent "with ancient concepts of freedom of contract," and that refusal to do so would be a "heavy hand indeed on the future development of international commercial dealings by Americans." *Id.*, at 11–12.

■ A fundamental question in evaluating the effect to be afforded a forum selection clause is whether its language is mandatory or permissible. *See Autoridad De Energía Eléctrica v. Ericsson Inc.*, 201 F.3d 15 (1st Cir.2000). A mandatory clause is one that requires that the litigation be brought only in the chosen forum, to the exclusion of others. *Id.*, at 19; *Redondo Construction Corp. v. Banco Exterior de España*, 11 F.3d 3, 6 (1st Cir. 1993). A permissible clause, on the other hand, is one that allows the parties to litigate in the chosen forum, but does not purport to exclude them from litigating in some other forum that otherwise has jurisdiction. *Id.* When found to be mandatory, courts will ordinarily enforce a forum selection clause.[2]

■ The question of whether to enforce a forum selection clause is one of federal law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Because of *Erie*,[3] however, the situation is theoretically more complex when federal jurisdiction is based on diversity of citizenship. Nevertheless, given the similarity between federal law and Puerto Rico law concerning enforcement of forum selection clauses,[4] the First Circuit has applied federal common law when interpreting them in a diversity context. *See Encyclopedia Britannica Inc.*, 239 F.3d at 387 n. 1; *Lambert v. Kysar*, 983 F.2d 1110, 1116–17 (1st Cir.1993)("In cases where federal law and state law coincide on the issue in question, it is unnecessary for the court to make a full *Erie* analysis").

---

**2.** Note, however, that a mandatory forum selection clause does not divest a court of jurisdiction that it otherwise retains. Rather, the clause merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction. Therefore, "exclusive jurisdiction" in this context refers to the intent of the parties rather than the actual power of the court. *See Bremen*, 407 U.S. at 12, 92 S.Ct. 1907; *Silva v. Encyclopedia Bri-*

*tannica, Inc.*, 239 F.3d 385, 389 n. 6 (1st. Cir.2001).

**3.** *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**4.** *See Unisys v. Ramallo*, 128 D.P.R. 842 (1991)(stating that the Puerto Rico Supreme Court has adopted the federal jurisprudence regarding general enforceability of forum selection clauses).

■ Under First Circuit standards, a party opposing the enforcement of a forum selection agreement must show that the particular clause: 1) was not freely negotiated or was the result of fraud; 2) contravenes a strong public policy of the forum where the suit is brought; or 3) the party challenging its enforceability shows that trial in the contractual forum will be so gravely difficult and inconvenient that it will, for all practical purposes, be deprived of its day in court. *Miró González v. Avatar Realty, Inc.*, 177 F.Supp.2d 101, 104 (D.P.R.2001) (quoting *M/S Bremen*, 407 U.S. at 18, 92 S.Ct. 1907).

After carefully reading section 27 of the General Agreement, this Court finds that the language therein contained expresses a mandatory choice of law and forum. In said clause, the parties consented to "irrevocably [submit] to the exclusive jurisdiction of the State and Federal Courts located in Maryland for purposes of any suit, action, proceeding or judgment which directly or indirectly relates to or arises from this Agreement." This is, indeed, very sweeping and unequivocal language.[5] Moreover, Intercall itself acknowledges that the clause in question would ordinarily be enforced under the Supreme Court and First Circuit's standards. (Docket No. 6).

However, in order to defeat its enforceability, Intercall does not allege any of the three voiding circumstances enumerated above. Instead, Intercall claims that the cited cases are not controlling because they dealt with breach of contract claims, not nullity of contract claims. Intercall sustains that this difference is fundamental because the essential premise of the discussed precedents is that the controversy in each of them emerges from a valid and enforceable contract that has been allegedly breached. Intercall thus argues that in those cases only the enforceability of the clause was questioned.

Conversely, Intercall invites this Court to first decide whether the parties in this case reached a valid agreement under Puerto Rico law and then proceed to answer its "procedural offspring," referring to the enforceability of the forum selection clause. In other words, Intercall suggests that the validity of the choice of forum clause is subordinated to the validity and existence of the contract in which it is contained. This assertion is untenable under Supreme Court precedents.

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court expressed an opposite view in a case dealing with one of the most widely used forum selection agreements: an arbitration clause. In essence, the Court asserted that in passing upon an application for a stay of arbitration, a federal court may not consider a claim of fraud in the inducement of the contract generally but may consider only the issues relating to the making and performance of the particular agreement to arbitrate. Through this decision, the Court endorsed the Second Circuit's "separability doctrine", to the effect that, except where the parties otherwise intend, arbitration clauses as a matter of federal law are separable from the contracts in which they are embedded, and "that where no claim of fraud was directed to the arbitration clause itself, *a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.*" *Id.* at 402 (emphasis added).

Likewise, in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), after reiterating that an agreement to arbitrate is, in effect, a

---

5.  *Cf. Ericsson Inc.*, 201 F.3d at 18.

specialized kind of forum selection clause, the Court clarified that

> [i]n *The Bremen* we noted that forum-selection clauses should be given full effect when a freely negotiated private international agreement is unaffected by fraud. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. ***Rather, it means that an arbitration agreement or forum selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion.***

*Id.,* at 519 n. 14, 94 S.Ct. 2449 (emphasis added and citation omitted).

According to the foregoing, Courts must distinguish between challenges to the validity of the underlying contract on the one hand, and to the validity of the forum selection clause in particular, on the other. Under the purview of this separability doctrine, a forum selection clause is deemed to be separate from, and independent of, the contract containing it. Therefore, if the forum selection clause is not vitiated by fraud or otherwise unenforceable, then any other controversy related to the underlying contract must be entertained in the contractually designated forum.

Consequently, Intercall could have alleged that it agreed to the forum selection clause because of some kind of coercion or fraud. It could also have argued that enforcing it would be contrary to Puerto Rico's public policy, or that the parties would be inconvenienced to the extent of being deprived of their day in court.

Intercall, however, only argues that having to litigate in Maryland would pose some inconvenience. But such an inconvenience was foreseeable to the parties when they negotiated and agreed on the contents of the forum selection clause. If Intercall did not want Maryland courts as the forum to litigate its disputes with defendants, it should have made this clear during negotiations preceding the contract or included language to that effect in the contract itself.

In sum, Intercall just concludes, without presenting concrete or factual allegations, that "the circumstances surrounding the negotiations and eventual signing of the Master Member Agreement show a portrait of nebulous activity and deceit." (Docket No. 10, at 16) This is insufficient to defeat a freely agreed forum selection clause among sophisticated and relatively equally footed corporations.

Defendants have thus met the burden of convincing this court that the parties validly designated the courts of Maryland as the proper venue to entertain any controversy arising from their contractual relation. The fact that a party discovers after some time that it would have been more convenient for it to litigate in a different forum is insufficient to defeat the obligations it freely entered into.

## CONCLUSION

In light of the foregoing, and in the interest of justice, the Court hereby denies the defendants' motion to dismiss under Rule 12(b)(3), but grants the defendants' motion to transfer the case under 28 U.S.C. § 1404. (Docket No. 6). This case is hereby transferred to the United States District Court for the District of Maryland. The Clerk of the Court shall act accordingly.

IT IS SO ORDERED.