# United States Court of Appeals
## For the First Circuit

No. 99-2165

EDWARD PAUL COADY,

Plaintiff, Appellee,

v.

ASHCRAFT & GEREL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya and Lynch, Circuit Judges,
and Schwarzer, Senior District Judge.*

Barry E. Cohen, with whom Tara W. Blanchard, Crowell &
Moring LLP, R. Robert Popeo, Peter A. Biagetti, and Mintz Levin
Cohn Ferris Glovsky & Popeo were on brief, for appellant.
J. Owen Todd, with whom Todd & Weld, Patrick T. Jones, Peter
J. Schneider, and Cooley Manion Jones LLP were on brief, for
appellee.

---

*Of the Northern District of California, sitting by
designation.

August 8, 2000

**LYNCH,** <u>Circuit Judge</u>.  The parting of ways of attorneys in a law firm is often difficult; in this instance it has been unusually acrimonious.  In this dispute between Edward Paul Coady, an attorney, and Ashcraft & Gerel, his former law firm, the firm appeals the district court's confirmation of an arbitration award.  The core of this case concerns the award to Coady of $45,000 in additional bonus compensation, plus fees and expenses for the arbitration.  Ashcraft & Gerel argues that the arbitrators exceeded their authority under the limited arbitration clause of Coady's employment agreement.  Ashcraft & Gerel also appeals the district court's earlier refusal to transfer Coady's application for arbitration to the federal district court for the District of Columbia, where the law firm had earlier filed a complaint alleging, inter alia, that Coady was in breach of his contract.  Coady later counterclaimed in the D.C. court for breach of contract.[1]

---

[1]    Alleging arbitrator misconduct, Ashcraft & Gerel also argues that the district court erred in not vacating the award under 9 U.S.C. § 10(a)(3) as being fundamentally unfair. Because of our resolution of the issue of the scope of the arbitrators' authority, we need not reach this issue.

We hold that the initial order of reference to the arbitrators by the Massachusetts district court referred matters outside the arbitrators' authority, and that in making determinations as to the bonus owed to Coady, the arbitrators exceeded the scope of their authority under the arbitration clause. The arbitrators did so in at least three ways. First, once the parties stipulated as to the meaning of certain terms in Coady's employment contract, there was no longer any ambiguity or question of interpretation for the arbitrators to resolve. Next, the panel made factual findings regarding the law firm's alleged manipulation of its "senior partner draw," a sum that limited the size of the bonus that Coady could receive.[2] Finally, the panel calculated the amount of the additional bonus owed to Coady. The latter two were issues of the application of the contract terms to the facts, matters that were not within the arbitrators' limited authority under the contract. We vacate the arbitral award and remand with instructions to transfer any further proceedings related to Coady's bonus to the U.S. District Court for the District of Columbia. We do not

_____

[2] In addition to his salary, Coady was entitled to receive in 1997 a bonus equal to 25% of the net profits of Ashcraft & Gerel's Boston office, which he managed. His employment agreement, however, set a cap on his total earnings: "[Coady] shall receive in no event any amount in total compensation for any calendar year in excess of a senior partner's draw for [the] same calendar year."

-3-

decide whether the Massachusetts district court abused its discretion by initially refusing to transfer the case, but conclude that it was in error as to the primary factor on which it relied.

## I.

In 1989, Coady joined the Boston office of Ashcraft & Gerel, a law firm based in Washington, D.C. He later became the managing attorney of the Boston office, and held that position until April 1998. Coady was never an equity partner; he characterized his status in 1996 as a "contract non-equity partner."

In early 1997, disputes arose between Coady and the firm over Coady's compensation and his management of the office. Coady's employment agreement authorized arbitration of "ambiguities or questions of interpretation of this contract," if the parties could not resolve their differences. Coady informed Ashcraft & Gerel that he intended to submit the disputed employment issues to arbitration.

After unsuccessful negotiations (including indications that Coady planned to resort to arbitration), Ashcraft & Gerel filed a complaint for damages and a declaratory judgment in the U.S. District Court for the District of Columbia on August 1, 1997. The firm claimed that Coady had violated his duties and

-4-

obligations to the firm, and sought a declaration that it was entitled under the employment agreement to terminate Coady for cause. The firm had an interest in terminating him for cause because the employment contract called for a payment of $400,000 to the innocent party in case of breach. Coady later filed a counterclaim for breach of contract.

On August 19, 1997, Coady filed an application for arbitration in Massachusetts state court; Ashcraft & Gerel removed that action to the federal district court for the District of Massachusetts and moved to dismiss, stay, or transfer venue to the District of Columbia court. Although the Massachusetts federal district court initially decided to transfer the case to the D.C. court, it later reconsidered the transfer. See Coady v. Ashcraft & Gerel, 996 F. Supp. 95, 98 (D. Mass. 1998). It reconsidered because its original transfer decision had been premised not on the first-filed doctrine, but on a ground never presented to it by the parties. See id.

After reconsideration, the Massachusetts district court denied Ashcraft & Gerel's motion to transfer, citing the existence of what it perceived as a judicial emergency in the federal district court for the District of Columbia as its primary reason for refusing to transfer the case. See id. at 100, 106. The court then considered Coady's application for

arbitration. Coady sought an order compelling arbitration of "all of the matters in dispute" between himself and Ashcraft & Gerel. Id. at 106. The court found, however, that the arbitration clause in his employment contract was an unusually limited one: it authorized arbitration only of questions of ambiguity or interpretation of the contract; questions of breach of contract were not within the scope of the clause. See id. at 106-07. Neither party disputes this holding. The court identified four major issues that it considered to be contract interpretation issues and referred them to an arbitration panel in Massachusetts. See id. at 108-10. The court acknowledged that the arbitration could not completely resolve the parties' disagreements: "Unless the parties mutually agree to continue arbitration for the purpose of complete resolution of a dispute, the dispute must be resolved through litigation, or private settlement." Id. at 107.

In May 1998, the D.C. district court denied Coady's motion for a stay of proceedings pending the arbitration. From that point on, one federal district court action proceeded in Massachusetts while another proceeded between the same parties in the District of Columbia on essentially the same subject matter. In addition, the arbitration, related to both lawsuits, proceeded in Massachusetts.

The arbitration panel held a three-day hearing in Boston in November 1998, and issued its first Findings, Orders, and Award on February 16, 1999. Ashcraft & Gerel then filed a motion in the Massachusetts district court to vacate the panel's decision. On April 29, 1999, the Massachusetts district court denied the motion. The court affirmed the arbitrators' order that there be additional discovery in order to assist the panel in calculating Coady's bonus. The panel had decided at least two issues of breach of contract, finding that Coady was not in breach, but the law firm was. Ashcraft & Gerel protested to the district court that these findings exceeded the panel's authority. The court declined to address the breach issues, saying they should be resolved by the D.C. district court. The panel had also awarded Coady his expenses and counsel fees on a finding that he was the winner of the arbitration.[3] The court made no determination on that issue because of its decision to refer the breach issues to the D.C. court.[4]

---

[3] The employment agreement provided that "the reasonable expenses and costs of [the arbitration] will be borne by the loser."

[4] The court also upheld the panel's findings that Coady had not misused his firm credit card, and that the firm's partners, not Coady, had the ultimate authority over hiring in the Boston office.

-7-

In June 1999, the D.C. district court ruled on the breach issues in the panel's decision that the Massachusetts district court had declined to address. The D.C. court held that the law firm had never submitted to a broader scope of arbitration, as Coady contended, and that the panel had exceeded its jurisdiction on the breach of contract issues. It vacated the panel's decision as to those issues. The D.C. court held that it could not rule on the bonus issue because the Massachusetts district court had retained control of it.[5]

Ashcraft & Gerel's request for a ruling that it had cause to terminate Coady and its breach of fiduciary duty claim against him were later tried to a jury in the District of Columbia proceedings. The jury found that Ashcraft & Gerel had good cause for terminating Coady, which foreclosed Coady's breach of contract counterclaim. The jury also found that Coady had not breached his fiduciary duties to the firm. Ashcraft & Gerel was awarded $400,000 in liquidated damages against Coady under the employment contract.[6]

---

[5] The D.C. court also ruled that the portions of the arbitration award to which Ashcraft & Gerel had not objected would have preclusive effect in the D.C. litigation, including the panel's finding that Coady did not misuse his firm credit card.

[6] We were informed by counsel at oral argument that this decision has been appealed to the D.C. Circuit. See Ashcraft & Gerel v. Coady, No. 00-7105 (D.C. Cir. filed Apr. 12, 2000).

Meanwhile, the Massachusetts arbitration panel issued a Supplemental Order, Finding, and Award on May 7, 1999, in which it clarified that even if it did not consider the breach of contract findings that were referred to (and later vacated by) the D.C. court, it would still find that Coady was the winner of the arbitration. It thus reaffirmed that Coady was entitled to an award of fees and expenses, including reimbursement of $36,000 for his arbitration expenses. It also rejected objections to its discovery orders, and found that Ashcraft & Gerel's argument that it misunderstood its discovery obligations "exceed[ed] the bounds of credulity."

The panel held another hearing on May 25, 1999, and on June 4 issued its Supplemental Findings, Orders, and Award addressing Coady's 1997 bonus. As explained above, "senior partner draw" was a key term in understanding how Coady's bonus was calculated, because it acted as a cap on his total compensation. During the November 1998 arbitration hearings, the firm had stipulated that it agreed with Coady's view of the method for calculating his bonus:

> [T]he calculation of the bonus that Mr. Coady calculated [based on a stated percentage of the Boston office's net profits, with net profits defined as Boston office revenue minus Boston office expenses] is accurate for as far as it gets you. But it doesn't get you very far because his bonus, total compensation, was subject to a

cap, and he couldn't earn any more than the senior partners earned. And we have further stipulated that the cap should be calculated in accordance with historic accounting practices of Ashcraft & Gerel and in accordance with generally accepted accounting practices of Ashcraft & Gerel.

The real disagreement between the parties thus centered not on the method of calculating the bonus, but on Coady's claim that the firm had deliberately underpaid its senior partners in 1997 in order to lower the cap and thereby reduce his bonus. Coady claimed that the firm had accomplished this by improperly deferring 1997 income to 1998, and by not attributing income from the firm's separate affiliation with the Boston firm of Hugo & Pollack. In response, the firm repeatedly objected that these issues were beyond the scope of arbitration, but put on evidence.

In its June 4 decision, the panel proceeded to apply the interpretation of the bonus calculation method agreed on by the parties to the facts, including its finding that Coady had made a prima facie case that the law firm had manipulated the size of the senior partners' draw. The panel found that while it could not calculate Coady's exact 1997 bonus on the evidence before it, it was able to determine that Coady was entitled to at least $45,000 more than he had received. The arbitrators also held that Coady was the winner of the arbitration on the

issue of his 1997 bonus, and thus entitled to fees and expenses related to that issue. The panel gave Coady two options: accept $45,000 as the additional bonus figure, or pursue further discovery. Coady opted for the $45,000. The panel issued its final order on June 30, and Coady moved the next day in the Massachusetts district court for confirmation of the arbitral award. Ashcraft & Gerel again objected, arguing that the arbitrators had exceeded their authority, due at least in part to error in the initial order of reference to the arbitrators by the Massachusetts court. The district court confirmed the arbitration award on September 15, 1999.

## II.

This case comes to us in an unusual posture, partly as a result of there being different proceedings involving the same case in two different federal courts and at least an arguable inconsistency in the outcomes. While Ashcraft & Gerel makes several arguments on appeal, at the heart of the case now is the arbitral decision concerning Coady's bonus. The resolution of that issue considerably alters the posture of the remaining claims.

A. Rulings on the Arbitrability of the Bonus Issue

Coady's employment was primarily governed by his 1993 employment agreement with Ashcraft & Gerel, which was amended in

1994.[7]  The employment agreement, as amended, covers Coady's

duties, his compensation, and his degree of control over the

Boston office, and also sets liquidated damages for a breach by

either party.  The agreement includes the following arbitration

clause:

> It is agreed by the parties that <u>any ambiguities or questions of interpretation of this contract</u> shall be the subject of discussions by COADY and a [partners' committee] . . . . Any decision which [the committee] may reach in such a matter shall be binding on the partnership.  Either party may at [its] option elect to submit the matter to Binding arbitration, the reasonable expenses and costs of which will be borne by the loser; however, both parties agree to use reasonable means and good faith to attempt to resolve any differences that may arise prior to resorting to arbitration.

(emphasis added).

In its March 1998 decision, the district court

interpreted this arbitration clause, stating:

> This arbitration provision is not a standard broad arbitration clause applying to any dispute between Coady and Ashcraft &

---

[7]     There was also a so-called 1991 "prenuptial agreement," which governed the process for Coady's departure from the firm -- in particular, the apportionment of fees from Coady's continued representation of former Ashcraft & Gerel clients. The prenuptial agreement contains this arbitration clause: "In the event of any dispute over <u>the construction, interpretation, or application of this Agreement</u>, the parties agree to binding arbitration under the rules of the American Arbitration Association." (emphasis added).  The terms of the prenuptial agreement are not relevant to the issues in this appeal.

Gerel arising out of or relating to the Employment Agreement. Instead, <u>this Court reads this arbitration clause to define a limited scope of arbitration.</u> Under the Employment Agreement, the parties have agreed to arbitrate disputes (1) requiring clarification of the meaning of a particular contractual provision because the language of the contract suggests more than one reasonable interpretation (ambiguities) and (2) requiring construction of the substantive provisions of the contract. <u>Once the arbitrator determines the meaning of a contractual provision, the role of the arbitrator is complete.</u> Unless the parties mutually agree to continue arbitration for the purpose of complete resolution of a dispute, the dispute must be resolved through litigation, or private settlement.

<u>Coady</u>, 996 F. Supp. at 107 (emphasis added).[8]

The district court then proceeded to identify which of the disputed issues were arbitrable. <u>See</u> <u>id.</u> at 108-09. On the issue of the payment of Coady's bonus for the first half of 1997, the district court wrote:

By the express terms of the Employment Agreement, Coady is entitled to a bi-annual bonus equal to twenty-five percent of the net profits of the Boston office. This bonus payment is capped; Coady's total annual compensation cannot exceed a senior partner's draw for the same calendar year. Coady asserts that Ashcraft & Gerel has

---

[8]    In contrast, the court described the prenuptial agreement's arbitration clause, <u>see</u> <u>supra</u> note 7, as "slightly broader . . . as it subjects to arbitration not simply the process of discovering and ascertaining the meaning of the contract[,] but also applying the terms of the Agreement to a specific set of facts." <u>Id.</u>

-13-

> failed to make this bonus payment for the
> first half of 1997. The calculation of the
> bonus is the subject of arbitration as the
> determination of net profit requires
> interpretation of whether certain expenses
> are "related." However, the obligation to
> make this payment is not the subject of
> arbitration, as there is no ambiguity in the
> Employment Agreement regarding Ashcraft &
> Gerel's duty[] to make this bonus payment.

Id. at 108 (citations omitted) (emphasis added). In the conclusion of its opinion, the court identified four issues for arbitration. Only one was related to the bonus issue: "What are the related expenses for determining the Boston office's net profits?" Id. at 109. As described earlier, the "related expenses" issue was removed from consideration by the law firm's acceptance, during the arbitration, of Coady's figures.[9]

In its November 4, 1998 report on the issues subject to arbitration, and again in its February 1999 Findings, Orders, and Award, the arbitration panel stated that it believed that the amount of Coady's bonus -- not simply the nature of "related expenses for determining the Boston office's net profits" -- was subject to arbitration. The arbitrators based this conclusion on the district court's statement that "[t]he calculation of the bonus is the subject of arbitration," Coady, 996 F. Supp. at

---

[9] As a result, there is no occasion to consider whether this portion of the order of reference was in error.

108, and on the district court's later affirmance of the arbitrators' discovery order. In its February 1999 decision, the panel also found that Coady had made a prima facie case that Ashcraft & Gerel had manipulated its 1997 senior partner draw in order to reduce his bonus, and ordered further discovery that would allow it to calculate what Coady's bonus should have been.

In its April 1999 Memorandum and Order, the district court denied Ashcraft & Gerel's motion to vacate in part the arbitration award. The court held that deference should be given to the arbitration panel's view of the scope of its authority, citing Larocque v. R.W.F, Inc., 8 F.3d 95 (1st Cir. 1993). "[A]n arbitrator's view of the scope of the issue . . . is entitled to the same . . . deference . . . normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself." Id. at 97 (quoting El Dorado Tech. Servs., Inc. v. Union Gen. de Trabajadores, 961 F.2d 317, 321 (1st Cir. 1992)) (internal quotation marks omitted).

On the bonus issue, the court concluded that the arbitrators had not exceeded the scope of their authority when they sought to calculate the amount of Coady's bonus and ordered discovery on the senior partner draw to facilitate the calculation of the bonus amount. Quoting its March 1998 order of reference, the court wrote:

-15-

This Court concluded that the panel was to identify "the related expenses for determining the Boston office's net profits" to help calculate the bonus owed Coady. Ashcraft sought to limit the panel's scope to these related expenses only and now objects to the panel's going beyond this identification. In its discussion, however, this Court stated that "[t]he calculation of the bonus is the subject of arbitration as the determination of net profits requires interpretation of whether certain expenses are 'related.'" Thus, the Court's limited conclusion should be read in light of its more expansive discussion of this issue.

(citations omitted).

After another hearing and two supplemental orders, the arbitration panel issued its final order on June 30, 1999, which the court confirmed at a hearing on September 15, 1999. The district court did not issue a written explanation of its September 15 decision. At the hearing, however, the court repeated the reasoning from its April 1999 decision: first, the March 1998 decision did refer the calculation of Coady's bonus to the arbitrators; and second, the arbitrators' conclusions as to the scope of the arbitration should be given deference.

In Ashcraft & Gerel's view, the district court's March 1998 decision concerning the scope of arbitration held that the employment contract limited arbitration to matters of contract interpretation only. Ashcraft & Gerel argues that the arbitrators exceeded their authority when they held that

-16-

Ashcraft had manipulated the senior partners' draw and determined that the firm owed Coady additional bonus compensation. The firm argues that the district court erred in its April 1999 decision; when it ruled that the arbitrators had not exceeded the scope of their authority, the firm says, the court was misinterpreting its own March 1998 decision.

Coady argues that the district court's confirmation of the arbitration award was proper. According to Coady, the calculation of his bonus required interpretation of an ambiguous term in the employment contract, a task the arbitrators were specifically empowered to engage in by both the employment contract and the district court order. Coady phrases the question facing the arbitrators this way: was Coady's compensation capped by the number announced by Ashcraft & Gerel as the senior partners' draw, or did the firm have an obligation under the contract to follow its usual accounting practices to determine the cap on Coady's compensation? Coady says that the panel concluded in its February 1999 order that the cap number was not the one announced by Ashcraft in 1997, but that the actual number was yet unknown, as Coady had submitted prima facie evidence of "a substantial straddle of income in 1997."

B. <u>Standard of Review and Interpretation of the Arbitration</u>
<u>Clause</u>

The question of the appropriate standard of review is multifaceted. The question whether the parties agreed to arbitrate certain matters was for the court to decide. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Indeed, in PaineWebber, Inc. v. Elahi, 87 F.3d 589 (1st Cir. 1996), we held that "the question whether the subject matter of the underlying dispute is within the scope of an expressly limited arbitration agreement is an 'arbitrability' issue." Id. at 596 (construing AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 651 (1986)). And "arbitrability depends on contract interpretation, which is a question of law." Id. at 592 (construing Commercial Union Ins. Co. v. Gilbane Bldg. Co., 992 F.2d 386, 388 (1st Cir. 1993)).

As stated in First Options, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944 (quoting AT&T Techs., 475 U.S. at 649) (second and third alterations in original). The limited arbitration clause in Coady's employment agreement contains no such "clear and unmistakable" language; there is in fact no evidence that the parties agreed to submit the question of arbitrability to arbitration. Thus, the arbitrators' views

-18-

about what is arbitrable are not given the usual leeway courts give to arbitrators. See id. at 945-47.

Coady responds by citing the familiar doctrine that "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Even before First Options, however, that doctrine was subject to constraints. "So long as the arbitrator, acting within the scope of his delegated authority, is arguably construing the contract, his decision must stand." El Dorado Tech. Servs., 961 F.2d at 319 (emphasis added). The Federal Arbitration Act expressly provides that an award may be vacated "[w]here the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).

To use the doctrine as Coady posits would be to undermine First Options. Where the arbitrability of a dispute is to be determined by a court and the court determines that an issue is not arbitrable, the arbitrators' contrary conclusion that an issue is arbitrable carries no weight and is not entitled to deference. This is true even when the district court's order of reference is in error, as here. If the rule

were otherwise, a party who did not agree to arbitrate could be locked into an arbitral award through a series of errors.[10]

Here, the district court's initial order of reference determined that the employment agreement authorized arbitration only of questions of ambiguity or interpretation of the contract and that questions of breach of contract were not within the scope of the clause. See Coady, 996 F. Supp. at 107. The arbitrators were without power to enlarge upon that ruling. Some language in the order of reference, however, went beyond the district court's core holding that only issues of contract interpretation were arbitrable, and suggested to the arbitrators that they could decide the ultimate issue of the size of the bonus owed to Coady. See id. at 108 ("[t]he calculation of the bonus is the subject of arbitration").

---

[10]    The arbitral panel made the argument that Ashcraft & Gerel waived its objections to the arbitrators' view of the scope of their authority through its submissions to the panel. Coady has not made that argument on appeal. Even if Coady had made that argument, it is one we reject. Parties may supplement by their submissions the authority granted an arbitration panel under a contract. See Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2, 4 (1st Cir. 1992). Having examined Ashcraft & Gerel's submissions to the arbitrators and the transcripts of the arbitration hearings, we find that the firm consistently and vigorously maintained its objection to the scope of arbitration. (The D.C. district court reached the same conclusion in its June 19, 1999, ruling on Ashcraft & Gerel's motion to vacate the arbitration award.)

Whether the arbitration clause mandates that the actual calculation of Coady's bonus is subject to arbitration is, in our view, an issue of interpretation of the contractual language "ambiguities or questions of interpretation of this contract." The district court's ruling was one of interpretation, which did not turn on any factual findings. Thus, we review the point de novo, see MCI Telecomms. Corp. v. Exalon Indus., Inc., 138 F.3d 426, 428 (1st Cir. 1998); Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50 (1st Cir. 1997), and find that it was error.

By its plain language, the arbitration clause is limited to ambiguities and questions of interpretation. When these parties wanted an arbitration clause that covered the application of contract terms to specific facts, they were capable of drafting such a clause. The arbitration clause in the 1991 "prenuptial agreement," see supra note 7, applies to "the construction, interpretation or application of this Agreement." Coady, 996 F. Supp. at 98 (original emphasis removed and new emphasis added); see also id. at 107 (contrasting the arbitration clause in the prenuptial agreement, which "subjects to arbitration not simply the process of discovering and ascertaining the meaning of the contract[,] but also applying the terms of the Agreement to a specific set of

-21-

facts," to the narrower clause in the employment agreement). At bottom, arbitration remains "simply a matter of contract between the parties; it is a way to resolve the disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943. The employment agreement plainly manifests the parties' intent to limit arbitration to the interpretation of ambiguous contract terms.

The stipulations presented by the law firm at the November 1998 arbitration hearings resolved the ambiguities and questions of interpretation surrounding Coady's bonus; indeed, they eliminated any dispute between Coady and the law firm on these points.[11] This left no issue concerning the bonus that was within the scope of the arbitrators' authority. But, given the language in the district court's order of reference, it is understandable that the arbitrators went further.

There was, of course, considerable dispute about the application of the agreed-upon interpretations -- for example, whether the law firm had violated accepted accounting practices. But these issues of breach and calculation of sums were properly

---

[11] In retrospect, it might have been better for the law firm to have informed the Massachusetts district court at the time of its consideration of the order of reference that the firm would so stipulate. That might have framed the matter in sharper focus for the district court.

part of the factfinding in the D.C. court litigation, and not part of the arbitrators' task.

C. <u>Remedy</u>

The question becomes then one of fashioning an appropriate remedy, given the status of the bonus dispute and the parallel litigation that has proceeded in the District of Columbia. We remand to the Massachusetts district court with instructions to transfer the action, including the records of the arbitral hearings that have been filed, to Judge Kollar-Kotelly of the U.S. District Court for the District of Columbia. There is nothing left of the Massachusetts action, which was brought to compel arbitration. If there are to be further proceedings on the bonus issue, they should take place under the authority of the D.C. district court, which is completely familiar with legal and factual determinations made in the course of the D.C. trial, some of which may bear on the bonus dispute.

Our remand and transfer order is not based on Ashcraft & Gerel's argument that the Massachusetts court erred in failing to transfer the action in April 1998. The district court, Ashcraft & Gerel says, disregarded the "first-filed rule" and improperly applied the transfer criteria under 28 U.S.C. § 1404(a), thereby dividing jurisdiction over a single dispute between federal courts in Boston and Washington, D.C. Ashcraft & Gerel contends that the district court's ruling ran counter to

a principal concern behind both the first-filed rule and venue transfer under 28 U.S.C. § 1404(a): preventing duplication of effort and incompatible rulings.  Coady defends the district court's decision, arguing that because Ashcraft & Gerel was guilty of "racing to the courthouse," it was not entitled to application of the first-filed rule.

We would review the district court's decision on transfer of venue for an abuse of discretion.  See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987).  Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a). In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction.  See Cianbro, 814 F.2d at 11.  "Where identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice-of-venue decision."  Id.  The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of

forum.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Here, however, the decision by the district court not to transfer the action was "primarily due to the existence of a judicial emergency in the United States District Court for the District of Columbia."  Coady, 996 F. Supp. at 106 (emphasis added).  This was an issue the district court introduced into the case sua sponte, the parties not having argued it.  The district court apparently thought that the District of Massachusetts could handle the action better, given that it was at full strength, whereas the federal district court for the District of Columbia did not have its full complement of judges.

The court's reliance on this factor (which is materially different from docket congestion) was error.  The district court did not base its decision on undue delay to parties, but rather on the mere existence of a judicial emergency.  While expressions of concern that the President and Congress fill existing judicial vacancies are appropriate in other contexts,[12] it has no place in determining the rights of litigants under 28 U.S.C. § 1404(a), and is not "in the interest of justice."  28 U.S.C. § 1404(a).  Neither constitutional nor

_____

[12]   It is a topic covered by the Chief Justice of the United States in his annual report on the United States Courts.

-26-

statutory rights of parties are suspended when there are judicial vacancies in a district. We do not know whether absent this "primary" factor the court would have transferred the action. Nor do we need to decide whether absent that factor, the decision to refuse to transfer was an abuse of discretion.

### III.

We hold that the arbitrators exceeded the scope of their authority and vacate the arbitral award. The case is now in a different posture than it was in April 1998, and the solution most consistent with the policies behind § 1404(a) is to have any remaining matters addressed by Judge Kollar-Kotelly of the U.S. District Court for the District of Columbia.[13] We direct the district court to transfer this case to Judge Kollar-Kotelly.

So ordered.

---

[13] We recognize that both parties have invested considerable resources in this dispute already. We urge the parties to resolve by agreement the remaining issues and to avoid further proceedings.