Slattery v. Disney World          CV-03-267-M    12/08/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Megan S. Slattery, Individually and
as Personal Representative for the
Estate of Sean C. Slattery,
     Plaintiff

     v.                                    Civil No. 03-267-M
                                           Opinion No. 2003 DNH 213
Walt Disney World Company,
a Florida Corporation,
     Defendant


**O R D E R**


     Megan Slattery, on behalf of herself and as the

representative of her late husband's estate, brings this action

against Walt Disney World Company ("Disney World"), seeking

damages for what she says was the wrongful death of her husband,

Sean Slattery.  Her complaint asserts seven causes of action,

each alleging that Disney World's negligence (or that of one or

more of its employees) proximately caused Mr. Slattery's death.

The complaint also includes a claim for loss of consortium.


     Disney World moves to dismiss plaintiff's complaint for lack

of personal jurisdiction over it.  See Fed. R. Civ. P. 12(b)(2).

In the alternative, it asserts that the court should dismiss

plaintiff's complaint because this is not the appropriate venue in which to litigate her claims. See 28 U.S.C. § 1391. Finally, should the court determine that dismissal is not warranted, Disney World moves the court to transfer this matter to the United States District Court for the Middle District of Florida, the district in which plaintiff's husband died and, at least according to Disney World, the most convenient and practical forum for this litigation. See 28 U.S.C. § 1404. Plaintiff objects.

**Background**

While the parties agree on very few of the jurisdictionally relevant facts, the circumstances surrounding the death of Mr. Slattery (as set forth in plaintiff's complaint) are largely undisputed.

In April of 2002, plaintiff and her husband took their four children to the Walt Disney World resort in Florida. While there, they stayed at the Polynesian Hotel, which is located on the resort's premises and operated by Disney World. After arranging for a babysitter to watch their children, plaintiff and

2

Mr. Slattery went to dinner at a restaurant in the adjacent Grand Floridian Hotel, another hotel on the resort's premises operated by Disney World. According to plaintiff, employees of Disney World served her and Mr. Slattery dinner and alcoholic beverages. And, says plaintiff, because those employees over-served Mr. Slattery, he became intoxicated.

At some point during their meal, plaintiff and Mr. Slattery argued, prompting him to leave the restaurant and go for a walk. Eventually, a security officer employed by Disney World saw Mr. Slattery and noticed that he was intoxicated, confused, and looking for his wife. The officer asked Mr. Slattery to sit down on a nearby bench and said he would seek out some assistance for him. The officer then left and went to the lobby of one of the hotels to find the manager on duty. When he returned to the spot where he had left Mr. Slattery, the officer noticed that Slattery had gone. Presumably concluding that he had either found his wife or returned to his hotel room, the officer resumed his normal security routine. Plaintiff speculates that, after the officer left Mr. Slattery to find the hotel's manager, Slattery

3

walked off to "answer the call of nature."  Complaint at para. 12.

Adjacent to the Grand Floridian Hotel is a man-made pond, known as the Grand Lagoon.  A pier extends from the shore line out into the pond.  Guard rails extend throughout its length, with two exceptions: the end of the pier and a portion of the pier used for docking boats are not protected by guard rails.  According to plaintiff, during evening hours there is no barricade or gate to prevent patrons of the resort from walking onto the pier.  Nor is the pier adequately lighted.  Nor, says plaintiff, are there any warning signs located on or near the pier, cautioning pedestrians about the dangers of falling into the pond.

Mr. Slattery's efforts to locate a spot to relieve himself allegedly took him to the end of the pier.  And, says plaintiff, "[u]nsteady by the alcohol served by Defendant Disney restaurant wait staff, Mr. Slattery fell fully clothed in suit and tie into the Grand Lagoon and drowned."  Complaint at para. 12.

4

When Mr. Slattery did not return to his hotel room, plaintiff made several calls to the front desk, presumably to ask whether any hotel staff members had seen him. Eventually, she contacted the Orange County Sheriff's Office and reported Mr. Slattery as missing. Disney World's Security Lake Patrol Team began a search and discovered Mr. Slattery's suit jacket. The canine unit from the Sheriff's Office was then dispatched to the scene to assist in the search. After the search dog responded to the presence of a strong scent in one particular area on or near the pier, divers were dispatched to the pond. Mr. Slattery's body was discovered in the water at the end of the pier.

## Discussion

As noted, Disney World moves the court to dismiss plaintiff's claims on grounds that personal jurisdiction over Disney World is lacking and/or because this is not an appropriate forum in which to litigate plaintiff's claims. Alternatively, Disney World moves to transfer this proceeding to the United States District Court for the Middle District of Florida. Although plaintiff argues at length that the court may properly exercise personal jurisdiction over Disney World - she has

5

submitted a 50-page legal memorandum, six affidavits, several hundred pages of exhibits, and four video tapes - she has failed to develop (or support) any argument against the transfer of her claims to federal court in Florida. See generally Plaintiff's memorandum (document no. 15).

Although Disney World asserts that personal jurisdiction over it is lacking, the court need not resolve that issue because, even if Disney World is correct, the court still retains discretion to transfer this action pursuant to 28 U.S.C. § 1631. Alternatively, if the court might properly exercise personal jurisdiction over Disney World, it is vested with discretion to transfer this proceeding to a more appropriate forum. See 28 U.S.C. § 1404(a). Cf. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (addressing 28 U.S.C. § 1406, the companion section to 1404, and concluding that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.").

I.  Transfer under 28 U.S.C. § 1404(a).

Section 1404(a) of Title 28 provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Authority to transfer a case pursuant to that statute is committed to the court's broad discretion.  See United States ex rel. La Valley v. First Nat'l Bank, 625 F. Supp. 591, 594 (D.N.H. 1985).

As the party seeking transfer, Disney World bears the burden of demonstrating that transfer is warranted.  See, e.g., Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (decided prior to the enactment of section 1404(a), but discussing and applying the related common law doctrine of forum non conveniens).

In <u>Gulf Oil</u>, the Court identified the following factors as being relevant when determining whether dismissal, under the doctrine of forum non conveniens, is appropriate:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> * * *
>
> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

<u>Id.</u> at 508-09.

Shortly after the Gulf Oil opinion issued, Congress enacted section 1404(a) to alleviate some of the harshness of result associated with the doctrine of forum non conveniens and to authorize courts to transfer, rather than simply dismiss, civil actions that were brought in inappropriate venues. See generally Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). Nevertheless, the factors identified by the Court in Gulf Oil remain relevant when considering whether, under section 1404(a), it is appropriate to transfer an action.

> The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer. . . . As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955).

II.  Transfer of This Case is Warranted.

In light of all the relevant factors which bear upon the question of transfer under section 1404(a), the court concludes

9

that this is a case in which plaintiff's choice of forum should be disturbed and transfer ordered. First, courts generally recognize that the convenience of the witnesses is one of the most significant factors to be considered in any analysis under section 1404(a). See, e.g., Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 440 (D.N.H. 1991). Here, Disney World has identified numerous material fact witnesses who are likely to be called either at trial or, at a minimum, for depositions. All reside in Florida and include: the restaurant employees who served plaintiff and her late husband dinner and drinks on the night of Mr. Slattery's drowning; the Disney World security officer who encountered Mr. Slattery shortly before his death; the Disney World employees who received the phone calls placed by plaintiff inquiring into the whereabouts of Mr. Slattery; and the Disney World employees who assisted in the search for Mr. Slattery.

While those witnesses are employed by Disney World, other Florida residents who are likely relevant witnesses are not within Disney World's control, including: the police officers to whom plaintiff reported that her husband was missing and other public officials who conducted the search for Mr. Slattery; the

10

medical examiner who investigated the cause(s) of Mr. Slattery's death; and, because plaintiff's complaint calls into question the design and/or construction of the pier, public officials who are familiar with local building codes and/or those who actually approved the design and/or building permit for the pier. On the other hand, plaintiff is the only material factual witness who does not live in Florida and who might provide relevant testimony about the circumstances leading up to Mr. Slattery's death.

In addition to the numerous factual witnesses who reside in Florida, there are also many documents and public records relevant to plaintiff's claims that are located in Florida (e.g., building codes, architectural designs for the pier, police reports, medical examiner's notes, etc.). While those documents might readily be copied and used in litigation in this forum, their presence in Florida underscores the substantial interest that Florida has in the outcome of this case - an interest that New Hampshire simply does not share. For example, the provisions (and enforcement) of local building codes and safety regulations, as well as Disney World's compliance with them, will be relevant

11

to plaintiff's case.  Plainly, those are issues of substantial local concern.

Finally, plaintiff's complaint describes the pier from which Mr. Slattery allegedly fell as an "unreasonably dangerous trap," complaint at para. 54(c), which had inadequate lighting, insufficient guard rails, and no written warnings describing the perils of falling into the pond.  Should this case proceed to trial, the parties (or, at a minimum, Disney World) would likely want the jury to take a view of that pier.  Such a view would be virtually impossible if plaintiff's claims were litigated in this forum.

In short, the court concludes that the convenience of the many witnesses who are likely to be called in this matter (both those employed and not employed by Disney World), the existence of documentary evidence in Florida, the strong interest that Florida has in enforcing its own building codes and negligence law, the ability of a Florida federal court to more readily insure the presence of pertinent witnesses at trial, the greater familiarity with Florida common law possessed by courts in that

forum, and the substantial likelihood that a jury view of the pier in question would be helpful, all strongly counsel in favor of transferring this action to the Middle District of Florida to insure a fair, orderly, and cost-effective resolution of plaintiff's negligence claims against Disney World.

## Conclusion

Regardless of whether or not the court may properly exercise personal jurisdiction over Disney World, it concludes that, in the interest of justice, this matter should be transferred to the United States District Court for the Middle District of Florida. See 28 U.S.C. § 1404(a). See also 28 U.S.C. § 1631. Disney World's motion to dismiss (document no. 6) is, therefore, granted in part and denied in part. To the extent it seeks the dismissal of plaintiff's claims, the motion is denied. However, the motion is granted to the extent it seeks the transfer of this proceeding to a more appropriate federal forum in Florida. Accordingly, the Clerk of Court shall transfer this proceeding to the United States District Court for the Middle District of Florida.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 8, 2003

cc:   James K. Brown, Esq.
      Joseph F. McDowell, III, Esq.