OPINION
{¶ 1} Defendant-appellant Craig Eicher appeals from the trial court's decision and entry overruling his motion to stay this action and to refer the matter to arbitration.
 {¶ 2} Eicher advances two assignments of error on appeal. First, he contends the trial court erred in failing to enforce the arbitration provision in an Associate Agreement between himself and plaintiff-appellee Todd B. McManus. Second, Eicher contends the trial court erred in failing to enforce the mediation and arbitration provision in an Employment Agreement between himself and McManus. Upon review, we conclude that the claims raised in McManus's complaint against Eicher are not referable to arbitration under the narrow arbitration clause in the Associate Agreement. As a result, the trial court properly declined to stay this matter and to order arbitration under the Associate Agreement. We also find that the trial court properly declined to address the mediation and arbitration provision in the Employment Agreement, as Eicher's motion was based solely on the Associate Agreement. Accordingly, we will overrule both assignments of error and affirm the judgment of the Greene County Common Pleas Court.
 I. {¶ 3} The record reflects that McManus graduated from the Illinois College of Optometry in 2001 and shortly thereafter began working for Eicher, who also is an optometrist. The terms of the employment relationship were detailed in an Associate Agreement, which both parties signed. Among other things, the Associate Agreement contained an arbitration clause providing that "[i]f any dispute shall arise relative to the interpretation of this Agreement, the dispute shall be submitted to arbitration[.]" Prior to the commencement of McManus's employment, the parties also entered into a separate Employment Agreement that further defined their relationship. The Employment Agreement contained a broader mediation and arbitration clause providing for mediation and then, if necessary, arbitration "of any claim of any nature whatsoever arising out of or connected with" McManus's employment by Eicher.
 {¶ 4} On November 25, 2002, McManus resigned from his employment, allegedly at Eicher's insistence and under duress. Thereafter, on January 23, 2003, McManus commenced the present action, asserting six claims for relief. Count one of McManus's complaint alleged breach of contract based on Eicher's purported violation of the Associate Agreement. In particular, McManus alleged that Eicher breached the Associate Agreement by wrongfully discharging him in violation of a termination provision and by failing to provide a full support staff. Count two of the complaint set forth a claim for fraudulent inducement. It alleged that Eicher had fraudulently induced McManus to enter into the Associate Agreement, and to continue working under that Agreement, by knowingly making false promises about continued employment and a future ownership interest in Eicher's optometry business. Count three of the complaint alleged tortious interference with a business relationship. In support, McManus asserted that after his termination Eicher had continued to use his name on a sign outside of the business, that Eicher's office staff had falsely stated to patients that he was "unavailable" or that he never had worked at the business, and that Eicher had threatened to enforce a restrictive covenant in the Associate Agreement. Count four of the complaint alleged deceptive trade practices by Eicher. In particular, it asserted that Eicher had violated R.C. § 4165.02(A)(3) by "intentionally causing confusion and misleading patients seeking services" from McManus. Count five alleged that Eicher had violated R.C. § 4113.15 by failing to pay McManus salary, wages, and bonuses due under the Associate Agreement. Count six sought a declaratory judgment that the restrictive covenant in the Associate Agreement is unenforceable.
 {¶ 5} On February 26, 2003, Eicher moved to stay the action and to refer the matter to arbitration pursuant to the arbitration provision in the Associate Agreement. Eicher brought his motion under R.C. §2711.02, which provides, in part: "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement[.]" In opposition to Eicher's motion, McManus argued that his complaint did not seek interpretation of the Arbitration Agreement. Given that the arbitration clause of the Associate Agreement only required the parties to arbitrate disputes over contract interpretation, McManus insisted that the matter should not be referred to arbitration. In his reply memorandum, Eicher cited the separate Employment Agreement, arguing that the action should be stayed and referred to arbitration pursuant to the broader mediation and arbitration clause in that Agreement as well.
 {¶ 6} In a March 21, 2003, decision, the trial court overruled Eicher's motion. In so doing, the trial court did not address the mediation and arbitration clause in the Employment Agreement. With regard to the arbitration clause in the Associate Agreement, the trial court found ambiguity, reasoning as follows:
 {¶ 7} "* * * [I]n this case, it is difficult, if not impossible[,] to ascertain the `agreement' of the parties as it relates to the arbitration clause in this matter. The arbitration clause drafted by Defendant provides in relevant part: If any dispute shall arise relativeto the interpretation of this Agreement, the dispute shall be submittedto arbitration. . . . The arbitration clause is silent as it relates to issues concerning controversies or claims arising out of the contract. The additional language could have easily been inserted into the contract. Absent terms which address these issues, it is not clear to the Court what the true intent of the parties was as it relates to arbitration.
 {¶ 8} "In view of the ambiguity in the `agreement,' the Court is not persuaded that this matter should be stayed pending arbitration. Although there may be some issues relating to interpretation of the contract, the substantive claims in this case are properly before this Court. In the interest of judicial economy there appears to be little reason to stay this matter pending arbitration." (Doc. #15 at 2).
 {¶ 9} Following the trial court's ruling, Eicher filed an answer and a counterclaim against McManus. Eicher then filed a timely appeal from the trial court's denial of his motion to stay this action and to refer the matter to arbitration.
 II. {¶ 10} In his first assignment of error, Eicher contends the trial court erred in failing to enforce the arbitration clause in the Associate Agreement. In particular, he asserts that McManus's breach of contract claim relates to the Associate Agreement and necessarily requires interpretation of it. He characterizes the other claims as "ancillary" and argues that they must be arbitrated as well. Eicher also contends that the trial court's finding of ambiguity in the arbitration clause of the Associate Agreement mandates a referral to arbitration.
 {¶ 11} Although the parties dispute the appropriate standard of review in this case, we find de novo review to be proper. The central issue on appeal is whether the arbitration clause in the Associate Agreement covers the claims in McManus's complaint. The arbitrability of a claim is a question of law, and we review the arbitrability of a claim de novo. Gaffney v. Powell (1995), 107 Ohio App.3d 315, 319 ("The issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract."); Cohen ex rel. Estate of Ginsburg v.PaineWebber, Inc., Hamilton App. No. C-010312, 2002-Ohio-196 ("As the arbitrability of a claim is a question of law for the trial court, we review the issue of the arbitrability of the specific claims de novo."). In assessing the reach of the parties' arbitration clause, we are guided by four general principles, originally applied in the collective-bargaining context, that have gained widespread use in evaluating agreements to arbitrate. Council of Smaller Enterprises v.Gates, 80 Ohio St.3d 661, 665 n. 1, 1998-Ohio-172. First, "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Id. at 665, quoting ATT Technologies, Inc. v. Communications Workers ofAm. (1986), 475 U.S. 643, 648-649. Second, unless the parties provide otherwise, "`the question of arbitrability — whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination.'" Id. at 666, quoting ATT Technologies at 649. Third, "`in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" Id. Fourth, "`where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id., quoting ATT Technologies at 650. In other words, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Constr.Corp., 460 U.S. 1, 24-25 (1983); see also Gaffney v. Powell (1995),107 Ohio App.3d 315, 320 (recognizing that "[a]mbiguities as to the scope of the arbitration clause itself should be resolved in favor of arbitration"); Artex Oil Co. v. Energy Sys. Management of Ohio, Noble App. No. 292, 2002-Ohio-5244 (noting that "an arbitration clause should be enforced unless the court is firmly convinced that it is inapplicable to the dispute in question").
 {¶ 12} In the present case, the first and fourth principles are particularly relevant.[1] Those principles establish that McManus cannot be compelled to submit his claims to arbitration if he has not so agreed, but that any doubt or ambiguity in the arbitration clause should be resolved in favor of arbitration. As the Ninth District recognized inStillings v. Franklin Twp. Bd. of Trustees (1994), 97 Ohio App.3d 504,508, "even though the general rule establishes a strong presumption in favor of arbitration, that rule cannot expand the scope of an arbitration clause beyond that which was expressly intended by the parties." Stated differently, we must "look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." E.E.O.C. v. Waffle House, Inc. (2002), 534 U.S. 279,294. "While ambiguities in the language of the agreement should be resolved in favor of arbitration * * * we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." Id.
 {¶ 13} In its March 21, 2003, ruling, the trial court found ambiguity in the arbitration language of the Associate Agreement but still concluded that arbitration was not required. On appeal, Eicher reasons that if as the arbitration clause is ambiguous, the trial court should have sustained his motion to compel arbitration. Having reviewed the arbitration provision in the Associate Agreement as well as the trial court's ruling, we reject the trial court's finding of ambiguity. As noted above, the relevant language provides that "[i]f any dispute shall arise relative to the interpretation of this Agreement, the dispute shall be submitted to arbitration[.]" Unlike a broad agreement to arbitrate all disputes arising out of or related to a contract, the arbitration clause in the present case is narrow because it is limited to issues of contract interpretation. Cf. Crawford v. Ribbon Tech. Corp. (2000),138 Ohio App.3d 326, 332-333 (involving a broad arbitration agreement);Carter Steel Fab. Co. v. Danis Bldg. Constr. Co. (1998),126 Ohio App.3d 251, 254-255 (involving a narrow arbitration agreement). The arbitration provision at issue simply requires the parties to arbitrate disputes over the interpretation of the Associate Agreement. We find nothing ambiguous about this requirement. If a dispute arises over the correct interpretation of the Associate Agreement, the parties are required to arbitrate it. As the trial court properly noted, the arbitration clause is silent about arbitration of claims arising out of the Associate Agreement. Similarly, the arbitration clause is silent about arbitration of a party's performance or non-performance under the Agreement, or arbitration involving application of the Associate Agreement to a specific set of facts. The failure of the arbitration clause to address such issues, however, means only that the clause is a narrow one — not that it is ambiguous. Thus, we conclude that the Associate Agreement unambiguously requires the parties to arbitrate only disputes over contract interpretation, i.e., the meaning of the various terms contained therein.
 {¶ 14} We are equally unpersuaded by Eicher's argument that because McManus's breach of contract claim relates to the Associate Agreement it necessarily requires interpretation of the Agreement. In the abstract, of course, every breach of contract claim conceivably might raise an issue of contract interpretation. Indeed, whether a party breached a contract sometimes turns on a disputed meaning of one or more contract terms. As one federal court has recognized, however, "not every breach of contract claim properly falls within the ambit of an arbitration clause limited to contract interpretation."RCM Technologies, Inc. v. Construction ServicesAssoc., Inc.
(D.N.J. 2001), 149 F. Supp.2d 109, 114. At least two Ohio appellate courts have found that certain breach-of-contract claims did not fall under a narrow arbitration clauses calling for arbitration of contract-interpretation issues. See Carter Steel, supra, at 254-255;Gillen Concrete Excavating, Inc. v. Fortney Weygandt, Inc.
(July 16, 1997), Lorain App. No. 96CA006525. In each of those cases, a subcontractor sued for money due under the terms of a contract with a general contractor. Upon review, the appellate courts concluded that the subcontractors sought performance of an unambiguous promise to pay, not interpretation of the contracts.
 {¶ 15} Likewise, in Coady v. Ashcraft Gerel (1st Cir. 2000),223 F.3d 1, the First Circuit Court of Appeals reviewed an arbitration clause in an employment agreement that authorized arbitration of "ambiguities or questions of interpretation of this contract[.]" The First Circuit observed that the clause "plainly manifest[ed] the parties' intent to limit arbitration to the interpretation of ambiguous contract terms." Id. at 10.
 {¶ 16} Given that the parties no longer disputed the meaning of contract terms governing the employee's bonus (the subject of a breach-of-contract claim), the appellate court determined that there was nothing to be arbitrated. In reaching its conclusion, the Coady court acknowledged that considerable dispute remained about the proper application of the agreed-upon contract terms. The First Circuit reasoned, however, that applying the contract terms and resolving the breach-of-contract claim were matters for the trial court, rather than an arbitrator, given the narrow language of the parties' agreement, which limited arbitration to matters of contract interpretation.[2] Id. at 10-11.
 {¶ 17} In light of the foregoing authorities, we find no error in the trial court's decision overruling Eicher's motion to stay this action and to refer the matter to arbitration. In his motion, Eicher argued that the claims in McManus's complaint related to the parties' employment relationship. Likewise, he argues on appeal that the claims against him are "based on" or "founded on" the Associate Agreement. Although these assertions may be true, Eicher's motion failed to identify any particular language in the Associate Agreement the interpretation of which the parties disputed. Under the narrow arbitration clause at issue, it is not enough that McManus's claims may be related to the employment relationship or even to the Associate Agreement itself. By its plain language, the arbitration clause is limited to disputes related to theinterpretation of the Associate Agreement. "When these parties wanted an arbitration clause that covered the application of contract terms to specific facts, there were capable of drafting such a clause." Coady,
supra, at 10 (emphasis added). Indeed, as discussed, infra, the arbitration clause in the separate Employment Agreement between McManus and Eicher contains broad language requiring arbitration of "any claim of any nature whatsoever arising out of or connected with" McManus's employment by Eicher. In contrast, the Associate Agreement plainly manifests the parties' intent to limit arbitration to issues of contract interpretation.
 {¶ 18} Given the narrow scope of arbitration clause at issue, we conclude that the Associate Agreement does not require McManus's breach-of-contract claim against Eicher to be submitted to arbitration. The breach-of-contract claim seeks application of the Associate Agreement to the facts of McManus's dispute with Eicher. In particular, McManus alleges that Eicher breached the Associate Agreement by wrongfully discharging him in violation of a termination provision and by failing to provide a full support staff. As in Carter Steel, Gillen Concrete, andCoady, whether Eicher actually breached the contract is a matter for the trial court to decide. For present purposes, we note only that McManus's breach of contract claim, on its face, does not raise any issue of contract interpretation; and Eicher has not identified any language in the Associate Agreement the meaning of which the parties dispute.[3]
Accordingly, the record before us reveals nothing for an arbitrator to decide, and the trial court did not err in overruling Eicher's motion insofar as it relates to the breach-of-contract claim.
 {¶ 19} Finally, we reject Eicher's argument that McManus's other "ancillary" claims must be submitted to arbitration. In count two, McManus alleges that Eicher fraudulently induced him to enter into the Associate Agreement, and to continue working under that Agreement, by knowingly making false promises about continued employment and a future ownership interest in Eicher's optometry business. Although this claim may relate to the Associate Agreement, it does not appear to seek interpretation of it. In count three, McManus alleges that Eicher tortiously interfered with a business relationship by continuing to use his name on a sign outside of the business, having the office staff falsely tell patients that he was "unavailable" or that he never had worked at the business, and threatening to enforce a restrictive covenant in the Associate Agreement. Once again, this claim may relate to the Associate Agreement, but it does not appear to seek interpretation of the Agreement. In count four, McManus asserts that Eicher violated R.C. § 4165.02(A)(3) by "intentionally causing confusion and misleading patients seeking services" from McManus. This count does not appear to seek any interpretation of the Associate Agreement. In count five, McManus alleges that Eicher violated R.C. § 4113.15 by failing to pay McManus salary, wages, and bonuses due under the Associate Agreement. With regard to this claim, the parties appear to dispute whether McManus is entitled to the money in question. We note, however, that McManus has not raised any issue of contract interpretation, and Eicher has not identified any disputed contract language. In count six, McManus seeks a declaratory judgment that the restrictive covenant in the Associate Agreement is unenforceable. Although this claim obviously relates to the Associate Agreement, it does not appear to seek an interpretation of the Agreement. In his complaint, McManus does not dispute the meaning of any term in the restrictive covenant. He merely argues that the restrictive covenant is "unreasonable, unjust, unconscionable, and illegal[.]" For his part, Eicher has not identified any disputed language in the restrictive covenant that must be interpreted in order to resolve count six. Indeed, Eicher's motion before the trial court failed to identifyany specific dispute related to the interpretation of the Associate Agreement. As a result, the trial court properly overruled Eicher's motion.[4]
 III. {¶ 20} In his second assignment of error, Eicher contends the trial court should have sustained his motion to stay this action and to refer the matter to arbitration based on the mediation and arbitration clause in the Employment Agreement. As noted above, that provision required the parties to mediate and then, if necessary, to arbitrate "any claim of any nature whatsoever arising out of or connected with" McManus's employment by Eicher.
 {¶ 21} Upon review, we find this assignment of error to be unpersuasive. Even if McManus's claims come within the scope of the Employment Agreement's mediation and arbitration clause, Eicher did not move for a stay based on the Employment Agreement. The sole basis for his motion was the arbitration provision in the Associate Agreement. In our view, a party cannot move to stay proceedings based on one agreement and later complain that the trial court failed to sustain the motion based on language in a different agreement. Although Eicher did bring the Employment Agreement to the trial court's attention in his reply brief, it was not the basis for his motion. We simply cannot say that the trial court erred in failing to consider mediation and arbitration language in the Employment Agreement when ruling on Eicher's motion, which was predicated solely upon the arbitration clause of the Associate Agreement.
 {¶ 22} Finally, we are unpersuaded by Eicher's argument that the "efficient administration of justice" warrants reversal of the trial court's decision on the basis of the mediation and arbitration provision in the Employment Agreement. In essence, Eicher contends that if we affirm the trial court's judgment without considering the mediation and arbitration clause in the Employment Agreement, then he will return to the trial court and file a second motion based on the language in that Agreement. For present purposes, we express no opinion on Eicher's ability to take such action. Even if he has not waived his ability to invoke the mediation and arbitration clause in the Employment Agreement, the potential availability of relief thereunder does not demonstrate error in the trial court's refusal to order arbitration pursuant to the Associate Agreement. We note, too, that the Employment Agreement requires mediation first and then arbitration. In the present case, Eicher moved to stay the action and to refer the matter directly to arbitration. Given that Eicher's motion sought a direct referral to arbitration, the language of the Employment Agreement would not entitle him to the relief that he sought. For this additional reason, we reject his invitation to rely upon the Employment Agreement to find error in the trial court's denial of his motion.
 IV. {¶ 23} Based on the reasoning and citation of authority set forth above, we overrule Eicher's two assignments of error and affirm the judgment of the Greene County Common Pleas Court.
Judgment affirmed.
Fain, P.J., and Grady, J., concur.
[1] With regard to the second principle, the parties do not dispute that defining the scope of their agreement to arbitrate is a matter for judicial determination. With regard to the third principle, neither party has suggested that we should rule on the merits of McManus's claims, and the trial court did not do so.
[2] Although Coady is a First Circuit case, its analysis remains instructive because the federal substantive law of arbitrability is used to determine whether parties agreed to arbitrate a particular dispute. See, e.g., Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth (1985),473 U.S. 614, 626.
[3] If a future dispute does arise over interpretation of the terms of the Associate Agreement, we believe the proper response would be to stay the action pending an arbitrator's resolution of the interpretation issue. The action then would proceed in the trial court, where the arbitrator's interpretation would be applied to the claims in McManus's complaint. The foregoing procedure is consistent with R.C. § 2711.02, which provides, in part: "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issued involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement[.]"
[4] In opposition to this conclusion, Eicher cites only Roberts v. Bankof Am. NT SA (1995), 107 Ohio App.3d 301. In that case, however, the contract at issue included a broad arbitration clause requiring arbitration of "any dispute hereunder." Unlike the foregoing case, the arbitration clause in the Associate Agreement between McManus and Eicher does not require arbitration of "any dispute." As set forth more fully above, it requires arbitration of disputes related solely to the interpretation of the Associate Agreement. Under the arbitration clause at issue in Roberts, McManus's claims might be subject to arbitration. Under terms of the arbitration provision in the Associate Agreement, they are not.